PRESENT: ALL THE JUSTICES

WILLIAM C. HUDSON
                                              OPINION BY
v.  Record No. 022703          JUSTICE G. STEVEN AGEE
                                      SEPTEMBER 12, 2003
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                          T. J. Hauler, Judge


     William C. Hudson ("Hudson") appeals his conviction in the

Circuit Court of Chesterfield County for refusing to submit to a

breath test in violation of Code § 18.2-268.3.  Prior to trial

Hudson moved to suppress "all physical and oral evidence arising

or resulting from" his initial detention which he alleged to be

unlawful.  The trial court denied the motion.

     On appeal, Hudson assigns as error the trial court's denial

of the motion to suppress.  He also assigns error to the trial

court's findings that he was deemed to have given consent to a

breath test and that the Commonwealth met its burden of proving

that a blood test was unavailable.  We will affirm the judgment

of the trial court.

                    I.  FACTS AND PROCEEDINGS BELOW

     On January 26, 2002, Officer Wills of the City of

Petersburg police department was off-duty, but in uniform

wearing his badge of authority and driving an unmarked police

car on Route 288 in Chesterfield County.  Officer Wills observed

Hudson driving in an "erratic" manner, activated his emergency lights and caused Hudson to stop his vehicle. Hudson attempted to exit his vehicle, but Officer Wills commanded him to remain in his car, at one point brandishing his service firearm. He did not ask Hudson for identification, interrogate Hudson, or search either Hudson or his vehicle. Officer Wills remained at his police car behind Hudson's vehicle until Officer McCullough of the Chesterfield County Police Department arrived. At no time did Officer Wills see Hudson driving within the city limits of Petersburg and at no time was Officer Wills within one mile of the Petersburg city limits during his observation and stop of Hudson.

Officer McCullough was asked to respond to a Petersburg police officer who "was attempting to make a traffic stop on a vehicle in the county that was driving erratically and almost ran him off the road." Officer McCullough arrived on the scene to find Officer Wills at his police cruiser which was parked alongside the road, directly behind Hudson's car. Officer Wills told Officer McCullough that he "had to go off the road in order to avoid getting rear-ended by [Hudson's] vehicle." Hudson was sitting behind the steering wheel of his car which was parked but running. Officer McCullough asked Hudson to perform field sobriety tests and then arrested him for driving under the

2

influence.  Officer McCullough then transported Hudson to a location where he would take a breath alcohol test.

At trial, Hudson testified that he attempted to take the breath test several times, but the test operator repeatedly told him that she was not receiving a valid sample.  Hudson testified that, due to medical conditions involving his lungs, he was unable to provide an appropriate sample.  Hudson also testified that he requested a blood test and that his request was denied.

On rebuttal, Officer McCullough testified that he was in the room during Hudson's attempts to take the breath test and that from his experience, he could tell Hudson did not properly seal his lips tightly around the tube.  Officer McCullough stated he heard air escaping around the outside of the tube when the machine was unable to get a proper sample for analysis.  He also testified the test operator instructed Hudson "to put a proper seal on the tube . . . because all the air was escaping around the tube because the seal was not proper."  The Commonwealth introduced copies of the breath test results, one indicating an "invalid" sample and one indicating a "deficient" sample.  Officer McCullough also testified that Hudson never communicated any medical problem or that he was unable to take the breath test.

Hudson was charged with an unreasonable refusal to submit to a blood or breath test in violation of Code § 18.2-268.3 and convicted. We granted Hudson an appeal.

## II.  ANALYSIS

Hudson argues on appeal that the initial stop by Officer Wills violated his Fourth Amendment rights because it was an "unreasonable seizure." His basis for this claim is that Officer Wills "made no attempt to investigate any possible criminal activity" while awaiting the arrival of Officer McCullough. Alternately, Hudson argues that he was not required to take any test under Code § 18.2-268.2(B) because Officer Wills lacked authority to detain him under Code § 19.2-250 or as a private citizen. Hudson's final assignment of error is that the Commonwealth failed to meet its burden of proof as to the unavailability of a blood test. We disagree with Hudson's arguments.

A.  Hudson's assertion that his initial detention by Officer Wills violated the Fourth Amendment is barred by Rule 5:25.

On appeal, Hudson argues that the trial court erred in not granting his motion to suppress claiming the initial stop by Officer Wills was an illegal detention under the Fourth Amendment. As a consequence, Hudson contends his subsequent arrest by Officer McCullough was tainted and thus invalid.

4

Although conceding on brief that Officer Wills "had a reasonable suspicion to briefly detain him and question him," Hudson argues that his Fourth Amendment rights were violated because Officer Wills failed to immediately question and investigate him while awaiting the arrival of Officer McCullough. In Hudson's view, the use of the least intrusive means of temporary detention by Officer Wills caused the otherwise valid stop (from a Fourth Amendment perspective) to be unreasonable and therefore taint the detention and subsequent arrest.[1]

Hudson presents this argument for the first time on appeal. Neither his motion to suppress nor his argument to the trial court ever addressed the initial detention by Officer Wills as unreasonable because Officer Wills failed to interrogate or investigate Hudson before Officer McCullough arrived. Hudson's argument is thus barred from consideration on appeal under Rule 5:25. See Buck v. Jordan, 256 Va. 535, 545-46, 508 S.E.2d 880,

---

[1] Hudson concedes that if Officer Wills was deemed to be acting as a private citizen, and not as a police officer when he detained Hudson, then his Fourth Amendment argument is "wholly inapplicable." United States v. Jacobsen, 466 U.S. 109, 113 (1984). We will assume, without deciding, that for purposes of reviewing Hudson's Fourth Amendment claim Officer Wills was a "state actor" under the color of his authority as a police officer. In that context, we note the trial court found Officer Wills had "ample probable cause" to detain Hudson and the record contains ample credible evidence to support that holding.

5

885-86 (1998) ("We have repeatedly refused to consider issues or objections raised for the first time on appeal.").

B. Officer Wills made a lawful citizen's arrest.

Hudson argues he was not required to take a breath or blood test under Code § 18.2-268.2(B) because Officer Wills unlawfully arrested him. As a consequence, Hudson contends the subsequent arrest by Officer McCullough was tainted and also unlawful, so the resulting conviction is void.

Hudson posits two grounds in support of this argument. First, he avers that although Officer Wills lacked authority as a police officer to detain or arrest him under Code § 19.2-250, the policeman nonetheless cannot be deemed to be a private citizen making a citizen's arrest as at common law. Hudson argues this is so because Officer Wills acted under "color of governmental authority" as a police officer. Accordingly, Hudson asserts that Officer Wills' extraterritorial detention of Hudson was unlawful as an invalid citizen's arrest.

Alternatively, Hudson contends that if Officer Wills is considered a private citizen, then he could have made a valid citizen's arrest only if Hudson committed a felony. As Hudson's acts were a misdemeanor breach of the peace, and not a felony, Hudson argues his "arrest" by Officer Wills was unlawful and derivatively taints the subsequent arrest by Officer McCullough. We disagree.

6

1. Officer Wills as a Private Citizen

Officer Wills lacked statutory authority, acting as a police officer, to detain or arrest Hudson because Officer Wills was outside the jurisdictional boundary limits set out in Code § 19.2-250.[2] Nonetheless, Hudson argues Officer Wills could not make a valid "citizen's arrest" as a private citizen because he acted under the "color of his badge of authority, in uniform, displaying the badge, [and] had blue lights on."[3]

We find no merit to Hudson's argument that the "under color of office" doctrine applies to this case. That doctrine "prohibits a law enforcement officer from using the indicia of his or her official position to collect evidence that a private citizen would be unable [to] gather." West Virginia v. Gustke, 516 S.E.2d 283, 292 (W. Va. 1999). It is clear from the record

---

[2] Code § 19.2-250(A) states in pertinent part:

> Notwithstanding any other provision of this article and except as provided in subsection B hereof, the jurisdiction of the corporate authorities of each town or city, in criminal cases involving offenses against the Commonwealth, shall extend within the Commonwealth one mile beyond the corporate limits of such town or city.

[3] We assume that Hudson was "arrested" by Officer Wills as at common law. Under the common law, a "citizen's arrest" is "defined as [a]n arrest of a private person by another private person on grounds that . . . a public offense was committed in the arrester's presence." Black's Law Dictionary 104 (7th ed. 1999).

7

Officer Wills made no effort to collect any evidence of any kind from Hudson. Accordingly, the "under color of office" doctrine has no bearing on the case at bar and we reject Hudson's attempt to extend the doctrine to include an arrest.

In Gustke, the Supreme Court of Appeals of West Virginia examined a nearly identical case. A city police officer had completed his shift and was driving his marked police cruiser outside the city limits on an interstate highway toward his home. Under the West Virginia statute,[4] much akin to Virginia Code § 19.2-250, a local police officer lacks legal authority, as a police officer, to effect an arrest outside the corporate limits of his municipality. The off-duty officer observed the erratic operation of a vehicle on the interstate and engaged his emergency lights and stopped the driver. Gustke, 516 S.E.2d at 286.

In actions almost identical to those in the present case, the off-duty officer instructed the driver to stay in his vehicle and detained him until an authorized local officer arrived to arrest him. The off-duty officer did ask the driver

---

[4] W. Va. Code § 8-14-3 provides: "[A]ny member of the police force or department of a municipality . . . shall have all of the powers, authority, rights and privileges within the corporate limits of the municipality with regard to the arrest of persons."

for identification, but made no further investigation and did not collect any evidence of any kind. Id.

As in the case at bar, it was conceded in Gustke that the initial officer lacked authority under the applicable state statute to stop the driver, but the State contended he acted lawfully to effect a citizen's arrest. The driver asserted that the off-duty officer could not make a citizen's arrest because he acted under the "color of office" in that he was in uniform with his badge of authority and used his emergency equipment. Continuing, the driver argued that the officer, unlike a citizen at common law, could not be viewed as acting as a private citizen and therefore lacked the power to make a citizen's arrest. Id. at 289.

The Supreme Court of Appeals of West Virginia reviewed in detail the efficacy of a citizen's arrest by a police officer outside his territorial jurisdiction. Citing case law from eighteen states holding such a police officer had the authority as a private citizen to make a citizen's arrest, the Court concluded that "in accordance with these numerous authorities, we hold that a law enforcement officer acting outside his or her territorial jurisdiction, has the same authority to arrest as does a private citizen and may make an extraterritorial arrest under those circumstances in which a private citizen would be authorized to make an arrest." Id. at 291.

9

Citing the Florida District Court of Appeals decision in State v. Phoenix, 428 So. 2d 262 (Fl. Dist. Ct. App. 1982), the Court held the "under color of office" doctrine did not apply with respect to the officer in that case.

> But this doctrine does not prevent officers from making an otherwise valid citizen's arrest just because they happen to be in uniform or otherwise clothed with the indicia of their position when making the arrest. When officers outside their jurisdiction have sufficient grounds to make a valid citizen's arrest, the law should not require them to discard the indicia of their position before chasing and arresting a fleeing felon. Any suggestion that officers could not make a valid citizen's arrest merely because they happened to be in uniform or happened to be in a police car at the time they inadvertently witnessed a felony outside their jurisdiction would be ridiculous.

Gustke, 516 S.E.2d at 293 (quoting State v. Phoenix, 428 So. 2d at 266) (citations omitted).[5]

We find the reasoning of the Supreme Court of Appeals of West Virginia persuasive. The "under color of office" doctrine

---

[5] A similar approach is taken in the Restatement (Second) of Torts § 121(a), as noted in comment d to that section:

> The peace officer has all the privileges of arrest which, by the rules stated in §§ 119 and 120, are conferred upon one not a peace officer. In such a case, his privilege to arrest is not dependent upon his being a peace officer; and it is immaterial whether he purports to act in his capacity as peace officer or as a private person or whether he is or is not acting within the territorial or other limits of his designation.

Restatement (Second) of Torts § 121 cmt. d (1965) (emphasis added).

10

simply has no application in this case because Officer Wills made no attempt of any type to gather evidence against Hudson. He merely detained him until a duly authorized police officer arrived. Assuming a private citizen can make a valid citizen's arrest in these circumstances, we find it absurd to posit that a law enforcement officer, solely because he happens to be in uniform and in a police car, could not do so as well.

Accordingly, we conclude Officer Wills was acting as a private citizen at the time he detained Hudson and possessed the same authority to make a citizen's arrest as would any other private citizen. We now turn to the issue of whether a citizen's arrest would be valid upon the record in this case.

2. Citizen's Arrest for Breach of the Peace

Hudson contends that even if Officer Wills had the authority as a private citizen to make a citizen's arrest, that he was still not required to take a test under Code § 18.2-268.2(B). Hudson's rationale is that he could not be the subject of a lawful citizen's arrest as his actions were not a felony. He distinguishes our prior decision in Tharp v. Commonwealth, 221 Va. 487, 270 S.E.2d 752 (1980), and the Court of Appeals' decision in Hall v. Commonwealth, 12 Va. App. 559, 389 S.E.2d 921 (1990), aff'd en banc, Record Nos. 0963-88-1, 0964-88-1 (June 12, 1990), because those cases involved a police

11

officer, acting outside of his territorial authority, who made a citizen's arrest for a felony. Hudson's argument fails because a citizen's arrest can be made for a breach of the peace, as occurred in this case, as well as a felony.

At common law, a private citizen may arrest another for a breach of the peace committed in his presence. See Gustke, 516 S.E.2d at 291-92; see also Carroll v. United States, 267 U.S. 132, 156-57 (1925) (" 'In cases of misdemeanor, a peace officer like a private person has at common law no power of arresting without a warrant except when a breach of the peace has been committed in his presence . . . .' " (quoting 9 Halsbury's Laws of England 612)); accord W. Page Keeton, ed., Prosser and Keeton on the Law of Torts § 26 (5th ed. 1984) ("Broadly speaking, either an officer or a private citizen may arrest without a warrant to prevent a felony or a breach of the peace which is being committed . . . in his presence.") (footnotes omitted).[6]

---

[6] In Byrd v. Commonwealth, 158 Va. 897, 164 S.E. 400 (1932), we described the general parameters of acts constituting a breach of the peace at common law and as recognized in Virginia.

Despite argument on brief that he could only be the subject of a citizen's arrest for a felony, Hudson conceded at trial that "any normal citizen can pull somebody over for breach of the peace."

At trial, Officer McCullough described Officer Wills' observation of Hudson's conduct as follows:

> [Officer Wills] was almost run off the road. He had to go off the road in order to avoid getting rear-ended by this vehicle.
> He said that he at that point realized that it was a serious circumstance. The vehicle was weaving all over the road. He thought it was paramount that he stop the vehicle; therefore he made a stop before I could get there.

---

> "By 'peace' as used in the law in this connection, is meant the tranquility enjoyed by the citizens of a municipality or community where good order reigns among its members. It is the natural right of all persons in political society, and any intentional violation of that right is 'a breach of the peace.' It is the offense of disturbing the public peace, or a violation of public order or public decorum. Actual personal violence is not an essential element in the offense."

Id., 158 Va. at 902-03, 164 S.E. at 402 (quoting Davis v. Burgess, 20 N.W. 540, 542 (Mich. 1884)).

See also 4 William Blackstone, Commentaries on the Laws of England 1541 n.1 (William Draper Lewis ed., 1898) ("Offenses against the public peace include all acts affecting the public tranquility, such as assaults and batteries, riots, routs and unlawful assemblies, forcible entry and detainer, etc." (quoting City of Corvallis v. Carlile, 10 Or. 139, 142 (1882)).

Whether Officer Wills suspected Hudson was driving while intoxicated or not, Hudson's dangerous conduct on a public highway, in and of itself was a breach of the peace under any definition of that concept.  Hudson's driving presented a clear and present danger not only to Officer Wills, but to any person or their property on or near the highway.  Hudson's actions in forcing Wills off the road and driving so as to imperil others clearly constituted a breach of the peace sufficient to justify a citizen's arrest.  The similarity of Hudson's dangerous driving to that of an intoxicated driver only makes the case stronger.  See Gustke, 516 S.E.2d at 291-92 (citing multiple cases applying the concept of breach of the peace).

The common law in Virginia permits a citizen to effect an arrest for a breach of the peace occurring in his or her presence.  Hudson's dangerous driving, in and of itself, regardless whether he was under the influence of intoxicants, constituted a breach of the peace committed in the presence of Officer Wills.  Although Officer Wills was without authority as a police officer, he was fully entitled, as a private citizen, to effect a citizen's arrest of Hudson as at common law for the breach of the peace committed in his presence.

Since the citizen's arrest by Officer Wills was lawful and valid, the subsequent arrest by Officer McCullough was as well.

C. The accused bears the initial burden

14

of proof under Code § 18.2-268.2(B).

Hudson also asserts on appeal that the trial court erred in convicting him of violating Code § 18.2-268.3 because he established he was unable to take the breath test and the Commonwealth then failed to meet the burden of proof under Code § 18.2-268.2(B) that a blood test was unavailable.  We disagree.

In its 1995 revision to Code § 18.2-268.2, the General Assembly eliminated the statutory provision which gave a person arrested for driving while intoxicated a choice of either a blood or breath test.  Acts, 1994 cc. 359 and 363.  In its place, the General Assembly amended Code § 18.2-268.2(B) which now provides that a blood test "shall be given" only when the breath test is "unavailable" or when the person arrested is "physically unable to submit to the breath test."  Hudson asserts, based on his trial testimony, that he was physically unable to submit to the breath test and instead requested a blood test.  He contends the trial court committed reversible error by not then requiring the Commonwealth to prove that a blood test was unavailable.

This Court has not addressed the issue raised by Hudson as to the allocation of the burden of proof under Code § 18.2-268(B).  In Lamay v. Commonwealth, 29 Va. App. 461, 513 S.E.2d 411 (1999), the Court of Appeals considered which party bears

15

the burden of proving inability to take the breath test and reached this conclusion:

> Because it is the accused driver whose physical inability is at issue in such situations, logic dictates that the burden should fall on the accused to establish that fact. After an accused presents evidence of his physical inability, the Commonwealth is entitled to present evidence in rebuttal, after which it rests upon the trial court to determine whether the accused satisfied his or her burden.

Id. at 473, 513 S.E.2d at 417. We find the Court of Appeals' reasoning persuasive.

In a proceeding involving an unreasonable failure to consent to a breath test under Code § 18.2-268.2(B), the burden rests upon the accused driver to produce evidence that he was physically unable to take the test. Once the accused driver places that evidence before the trial court, the Commonwealth may present evidence in rebuttal. A trial court's determination that the accused driver has carried his burden of proof as to physical inability is a condition precedent to any finding that the Commonwealth was required to offer a blood test.[7]

---

[7] In his argument to this Court Hudson contends that "if the defendant is able to demonstrate that he was physically unable to submit to breath testing, the burden shifts to the Commonwealth to prove that a blood test was not available." This argument would be more persuasive with respect to the prior version of the statute which allowed the accused to choose between a breath or blood test. Pursuant to current Code § 18.2-268.2(B), once the trial court found that Hudson had not carried his burden of proof, the Commonwealth was relieved of any further burden and no blood test was required to be given

16

Hudson contends that he met the burden of proving his physical inability to take the breath test when he testified at trial that he has a lung disease which caused him to "experience severe difficulty breathing," and that he told the administering officer of the disease and requested a blood test. The Commonwealth, however, called Officer McCullough to rebut Hudson's testimony. Officer McCullough testified that he was present when the breath test was attempted and yet he did not hear Hudson make any statements regarding a medical condition. Furthermore, Officer McCullough, who testified he had years of experience witnessing breathalyzer tests, asserted that he could "constantly hear air escaping from around the tube" while Hudson was taking the test, despite instructions from the certified test operator to Hudson "to put a proper seal on the tube." Officer McCullough stated, "You can . . . tell when a tube is sealed properly and they are actually attempting to blow into the tube, but they are physically incapable of blowing into the tube. This was different."

After considering both Hudson's testimony and the Commonwealth's rebuttal, the trial court obviously placed greater weight on Officer McCullough's testimony, and the evidence in the record is sufficient to support that conclusion.

even if requested by the defendant. Had the trial court determined Hudson had met his burden, the Commonwealth would

17

Hudson therefore failed to carry his burden of proof that he was unable to submit to the breath test and no blood test was required to be offered.

## III.  CONCLUSION

For the reasons set out above, we find no error in the judgment of the trial court.  Hudson's Fourth Amendment argument is barred by Rule 5:25.  Although he lacked statutory authority as a police officer to detain Hudson, Officer Wills was lawfully entitled to effect a citizen's arrest for the breach of the peace by Hudson committed in his presence.  Finally, Hudson failed to meet his burden of proof that he was physically unable to take a breath test so no blood test was required.

The judgment of the trial court will, therefore, be affirmed.

<u>Affirmed</u>.

---

have been required to produce the results of a blood test.