COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Humphreys
Argued at Richmond, Virginia


JENNIFER LYNN SAWYER
                                                           OPINION BY
v.        Record No. 1366-03-2                    JUDGE LARRY G. ELDER
                                                           MAY 18, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge

Gregory R. Sheldon (Goodwin, Sutton & Duvall, P.L.C., on brief),
for appellant.

Margaret W. Reed, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


Jennifer Sawyer (appellant) appeals from her bench trial conviction for driving under the

influence, third or subsequent offense, a felony in violation of Code §§ 18.2-266 and 18.2-270.[1]

On appeal, she contends the trial court erroneously admitted a prior uncounseled misdemeanor

conviction for driving under the influence where the record failed to show she neither served an

active period of incarceration nor received a suspended sentence.  She also argues her conviction

is invalid because she proved she was physically unable to submit to a breath test and the

Commonwealth failed to offer her a blood test or prove such a test was unavailable.

We hold that appellant's prior uncounseled conviction was entitled to a presumption of

regularity and, thus, constitutionality.  Because appellant offered no rebuttal evidence, we adhere

to the presumption that the conviction did not result in an active or suspended jail sentence.

_____

[1] Appellant also was convicted for refusing to take a blood or breath test in violation of
Code § 18.2-268.3.  She does not challenge that conviction in this appeal.

Further, we hold the evidence supported the trial court's conclusion that appellant failed to prove she was physically unable to submit to a breath test. In the absence of such proof, appellant was not entitled to a blood test. Thus, we affirm the conviction.

## I.

### BACKGROUND

At about 2:30 a.m. on September 30, 2002, Chesterfield Police Officer James Kuzicks observed a vehicle driven by appellant making a right turn. Appellant's turn was "wide"; she pulled entirely into the lane for oncoming traffic and proceeded in that lane for about one-tenth of a mile. Before encountering any oncoming cars in that lane, appellant moved her vehicle into the proper lane of travel, but "the right front tires of [her] car went off the hard paved surface in[to] the gravel, grassy area" before returning to the road. Officer Kuzicks stopped appellant's vehicle.

When Officer Kuzicks approached the car, he detected an odor of alcohol emanating from both appellant and her vehicle. Her eyes were bloodshot, she sounded as if she was slurring her words, and she admitted she had been drinking. Officer Kuzicks asked appellant to perform some field sobriety tests and inquired whether she had "any ailments." When appellant said she had difficulty with her legs, Officer Kuzicks accepted her assertion and did not require her to perform any sobriety tests that involved walking.

When appellant failed to complete various field sobriety tests to Officer Kuzicks' satisfaction, he told appellant he suspected her of driving under the influence and offered her a preliminary breath test. Appellant agreed to take the test. On appellant's first attempt with the preliminary breath test machine, appellant "said she had a problem," but she provided a second sample in which she "gave . . . plenty of air[] and [the machine] worked like it was supposed to."

Officer Kuzicks then arrested appellant and took her to the police station. Kuzicks advised appellant of the implied consent law, and she consented to the breath test. After the required observation period, Officer Kuzicks attempted to administer the test repeatedly over a period of three minutes, but appellant "was not able to give . . . a valid reading." "[I]n the middle of taking the first breath test," appellant claimed for the first time that "she had problems with her lungs." Kuzicks recounted the attempts as follows:

> When I explained the test, I [said], You need to form a tight seal around the machine and blow hard enough where two small lines will appear on the machine and . . . keep those two lines there for approximately eight to ten seconds or until I say stop. When [appellant] started blowing on the breath machine, she got the two dashes up there, and then she stopped. She failed to keep them there, and she said she couldn't do it. And I informed her that she was doing just fine.
> . . . [Appellant] tried it again, and again she blew for a short time and then stopped. And she did this throughout the duration of the test which is three minutes . . . . Through the three minutes she kept blowing but not giving me a strong enough sampling or blowing continuously [enough] to give the machine a sampling it could read at which time it read deficient sample.

Officer Kuzicks testified that, based on the training and three years of "experience [he] had] had running the machine," he "believe[d] that [appellant] was not trying to give him a proper breath." Kuzicks told appellant he "believed she was not performing the test as she could," that "she was trying to beat the machine," and that he was going to call a magistrate to instruct her on the implied consent law.

The magistrate came to appellant and instructed her on the implied consent law. After an additional twenty-minute observation period, Kuzicks again attempted to administer the test. Appellant "went ahead and began blowing in the machine and then stopped. She did that for a period of three minutes, which resulted again as another deficient sample." Kuzicks testified that, each time he attempted to administer the test, appellant "was doing exactly what [he] said

until [he] said, You're just about there. And every time [he] said, You're just about there, just a little bit longer, [appellant] would stop."

Officer Kuzicks informed the magistrate of the results and indicated he was going to charge appellant with refusing to take the breath test. The magistrate then completed a "Declaration of Refusal" form on which he certified that appellant "refuses to permit the taking of a breath and/or blood sample and further refuses to execute the declaration of refusal."

Officer Kuzicks could not recall whether appellant requested a blood test, but said his notes contained no indication that she made such a request. Kuzicks took the position that a blood test "was not available in [appellant's] case because she performed the preliminary breath test like she should have." When asked how the amount of air required for a preliminary breath test "compare[s] to the amount [of air required by] the Intoxilyzer 5000," Officer Kuzicks responded, "It's the exact same type of breath system. It takes deep lung air."

The Commonwealth offered appellant's DMV record as evidence of two prior convictions for driving under the influence, a first offense conviction in 1993 and a second offense conviction in 1996. Appellant objected to admission of the 1993 conviction. The DMV record showed appellant was not represented by counsel in the proceedings that led to that conviction. The record also showed that appellant's license was suspended for twelve months as a result of the conviction. It contained no information regarding whether appellant was sentenced to a term of active or suspended incarceration. Appellant argued that, pursuant to the Supreme Court's ruling in Alabama v. Shelton, 535 U.S. 654, 122 S. Ct. 1764, 152 L. Ed. 2d 888 (2002), the Commonwealth had the burden to prove that she received neither active jail time nor a suspended sentence for the 1993 conviction. The trial court admitted the record of conviction over appellant's objection.

- 4 -

Appellant testified in her own behalf. She admitted having five beers during the course of the evening. She claimed she had suffered from chronic wheezing and shortness of breath since she was a child and that she had seen her doctor for such symptoms a week before her arrest, at which time he had given her an inhaler and medication. She said she "tried several times . . . to take the test" and that she "just . . . could not do it" because of the shortness of breath. "[She] could only blow to a certain point, and [she] could not blow any harder or longer than that." Appellant conceded she was able to give a breath sample when she was arrested in both 1993 and 1996.

Appellant claimed she asked the police officer for a blood test but that he just kept telling her "to blow into that machine." When asked whether she told the magistrate she wanted a blood test, she did not respond directly to the question and indicated merely that "[n]obody was listening to me."

Appellant argued in closing that because she proved she was unable to take the breath test and the Commonwealth failed to prove a blood test was unavailable, the charges should be dismissed. The trial court disagreed and found her guilty of driving under the influence, third offense. It sentenced her to five years but suspended all but 90 days of the sentence for ten years contingent upon certain conditions.

Appellant noted this appeal.

II.

ANALYSIS

A.

ADMISSIBILITY OF PRIOR UNCOUNSELED CONVICTION

Appellant contends that, in light of the Supreme Court's holding in Alabama v. Shelton, 535 U.S. 654, 122 S. Ct. 1764, 152 L. Ed. 2d 888 (2002), the Commonwealth bore the burden of

proving her uncounseled 1993 conviction did not result in the imposition of a term of active or suspended incarceration. She contends that, because the Commonwealth produced no evidence on this point, the admission of that conviction was error. We disagree. Although the holding in Shelton overrules Virginia's interpretation of federal constitutional law regarding the right to counsel in misdemeanor cases, it does not require any change in Virginia law regarding the allocation of the burden of production or proof in a case involving a collateral attack on a misdemeanor conviction that appears valid on its face. Even after Shelton, appellant bore the burden of producing evidence that her uncounseled misdemeanor DUI conviction resulted in the imposition of a period of incarceration, whether active or suspended. Because appellant failed to meet that burden, the admission of her uncounseled 1993 conviction into evidence for proof of recidivism was not an abuse of discretion.

The United States Supreme Court has summarized the relevant history of the right to counsel as follows:

> In Gideon v. Wainwright, 372 U.S. 335, 344, 83 S. Ct. 792, [796,] 9 L. Ed. 2d 799 (1963), we held that the Sixth Amendment's guarantee of the right to state-appointed counsel, [already] firmly established in federal-court proceedings . . . , applies to state criminal prosecutions through the Fourteenth Amendment. We clarified the scope of that right in Argersinger [v. Hamlin, 407 U.S. 25, 92 S. Ct. 2006, 32 L. Ed. 2d 530 (1972)], holding that an indigent defendant must be offered counsel in any misdemeanor case that "actually leads to imprisonment." 407 U.S., at 33. Seven terms later, [the holding in] Scott [v. Illinois, 440 U.S. 367, 99 S. Ct. 1158, 59 L. Ed. 2d 383 (1979)], confirmed Argersinger's "delimitation," 440 U.S., at 373. Although the governing statute in Scott authorized a jail sentence of up to one year, see id., at 368, we held that the defendant had no right to state-appointed counsel because the sole sentence actually imposed on him was a $50 fine, id., at 373. "Even were the matter *res nova*," we stated, "the central premise of Argersinger -- that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment -- is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel" in nonfelony cases. *Ibid.*

Subsequent decisions have reiterated the Argersinger-Scott "actual imprisonment" standard. See, e.g., . . . Nichols v. United States, 511 U.S. 738, 746[, 114 S. Ct. 1921, 1927, 128 L. Ed. 2d 745] (1994) (constitutional line is "between criminal proceedings that resulted in imprisonment, and those that did not"); id., at 750 (Souter, J., concurring in judgment) ("The Court in Scott, relying on Argersinger[,] drew a bright line between imprisonment and lesser criminal penalties.") . . . . It is thus the controlling rule that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense . . . unless he was represented by counsel at his trial." Argersinger, 407 U.S., at 37.

Shelton, 535 U.S. at 661-62, 122 S. Ct. at 1769-70.

In Nichols, the United States Supreme Court considered whether the Sixth Amendment barred consideration of a defendant's prior uncounseled misdemeanor DUI conviction, for which he was fined but not incarcerated, in determining his sentence for a subsequent felony offense. 511 U.S. at 740, 114 S. Ct. at 1924. The Court concluded that "an uncounseled misdemeanor conviction, valid under Scott because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction." Id. at 748-49, 114 S. Ct. at 1928.

In Griswold v. Commonwealth, 252 Va. 113, 115-16, 472 S.E.2d 789, 790 (1996), the Virginia Supreme Court interpreted Argersinger, Scott and Nichols to hold that if an uncounseled misdemeanant is convicted and sentenced to "actual[] imprison[ment]," the conviction violates a defendant's rights under the Sixth and Fourteenth Amendments of the United States Constitution and cannot serve as a predicate offense for sentence enhancement in recidivist proceedings. The Court concluded that a conviction resulting in a 180-day sentence, with two days to serve and 178 days suspended, was "constitutionally infirm because of the two days [for] which Griswold was actually imprisoned." 252 Va. at 114-15, 472 S.E.2d at 790.

In Shelton, the United States Supreme Court addressed the conflict among various state and federal courts regarding whether "appointment of counsel is a constitutional prerequisite to imposition of a conditional or suspended prison sentence." 535 U.S. at 660, 122 S. Ct. at 1768.

In doing so, it cited, *inter alia*, the Virginia Supreme Court's decision in Griswold as an example of a decision rejecting the notion that counsel is required in a case resulting in a suspended sentence. Id. at 660, 122 S. Ct. at 1768-69. It concluded that "a suspended sentence that may 'end up in the actual deprivation of a person's liberty' may not be imposed unless the defendant was accorded 'the guiding hand of counsel' in the prosecution for the crime charged." Id. at 658, 122 S. Ct. at 1767 (quoting Argersinger, 407 U.S. at 40, 92 S. Ct. at 2014). It thus rejected the Virginia Supreme Court's conclusion in Griswold that an uncounseled conviction is invalid only if an active period of incarceration is imposed.

Prior to the United States Supreme Court's rejection of Griswold in Shelton, we cited Griswold in Nicely v. Commonwealth, 25 Va. App. 579, 490 S.E.2d 281 (1997), for the "well established [principle] that a prior uncounseled misdemeanor conviction that did not result in *actual incarceration* may constitute proper evidence of recidivism." Id. at 584, 490 S.E.2d at 282-83 (emphasis added). However, that "well established" principle, subsequently rejected in Shelton, was not a key issue in Nicely, in which the record established only the fact of defendant's prior DUI conviction and did not indicate whether she received any sort of jail sentence, active or suspended. Id. at 582, 490 S.E.2d at 282. The key question we addressed in Nicely was how to "allocate[] the burden of proof in assessing compliance with [a] defendant's Sixth Amendment right to counsel," id. at 584, 490 S.E.2d at 283, without regard for whether a term of incarceration was active or suspended. We held in Nicely that, on collateral attack, facially valid convictions are entitled to a "presumption of regularity." Id.

> "A silent record or mere naked assertion by an accused" that his constitutional rights were violated is "insufficient" to rebut the presumption of validity. Here, the transcript established [Nicely's] previous misdemeanor conviction, without suggestion of imprisonment [or imposition of a suspended sentence], a circumstance which did not implicate the Sixth Amendment right to counsel in a collateral review of the conviction and entitled the

- 8 -

> Commonwealth to the presumption of regularity without offending
> due process.

Id. at 585, 490 S.E.2d at 283 (quoting James v. Commonwealth, 18 Va. App. 746, 752, 446

S.E.2d 900, 904 (1994)) (citations omitted).

Nicely involved a DMV transcript that "reflecte[d] neither the imposition of jail time[,

active or suspended,] nor the absence of counsel." Id. Nicely's transcript was silent on both

matters. Id. at 582, 490 S.E.2d at 282. Appellant's DMV transcript, by contrast, reflected that

appellant's 1993 conviction was uncounseled but contains no information regarding whether

appellant was sentenced to a fine or a period of active or suspended incarceration. Despite this

factual distinction, application to appellant's case of the legal principles regarding burden of

proof set out in Nicely, with the modification required by Shelton, dictates the same outcome

here as in Nicely. Appellant's transcript reflects the 1993 conviction was uncounseled, but it

does not indicate the imposition of a sentence that would have resulted in a violation of

appellant's right to counsel under Shelton. Thus, the Commonwealth is entitled to a presumption

that the sentence did not constitute such a violation--i.e., that appellant received neither an active

nor a suspended jail sentence--and appellant bore the burden of proving otherwise. Because

appellant produced no evidence rebutting the presumption of regularity, we hold the trial court

did not abuse its discretion in admitting evidence of the uncounseled 1993 conviction.

B.

SUFFICIENCY OF EVIDENCE TO PROVE
PHYSICAL INABILITY TO TAKE BREATH TEST

When considering the sufficiency of the evidence on appeal in a criminal case, we view

the evidence in the light most favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom. Higginbotham v. Commonwealth, 216 Va. 349, 352, 218

S.E.2d 534, 537 (1975). Unless we conclude a witness' testimony must be rejected as a matter

of law based on its inherent incredibility, we must defer to the credibility determinations of "the fact finder[,] who has the opportunity of seeing and hearing the witnesses." Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985). In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt. Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (*en banc*); see also Tarpley v. Commonwealth, 261 Va. 251, 256-57, 542 S.E.2d 761, 764 (2001) (noting fact that accused lied provided basis for rejection of accused's testimony but was not substantive evidence of guilt).

Pursuant to Code § 18.2-268.2, Virginia's implied consent law, "[a]ny person . . . who operates a motor vehicle upon a highway . . . in this Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples" of his blood or breath taken in order to determine the alcohol or drug content of his blood, "if he is arrested for violation of § 18.2-266 or § 18.2-266.1 . . . within three hours of the alleged offense." Code § 18.2-268.2(A). The statute further provides that "[a]ny person so arrested . . . shall submit to a breath test" and that "[i]f the breath test is unavailable or the person is physically unable to submit to the breath test, a blood test shall be given. . . ." Code § 18.2-268.2(B).

If an accused driver claims he was physically unable to submit to the breath test, "the burden . . . fall[s] on the accused to establish that fact. After an accused presents evidence of his physical inability, the Commonwealth is entitled to present evidence in rebuttal, after which it rests upon the trial court to determine whether the accused satisfied his or her burden." Lamay v. Commonwealth, 29 Va. App. 461, 473, 513 S.E.2d 411, 417 (1999), quoted with approval in Hudson v. Commonwealth, 266 Va. 371, 381, 585 S.E.2d 583, 589 (2003). "A trial court's determination that the accused driver has carried his burden of proof as to physical inability is a condition precedent to any finding that the Commonwealth was required to offer a blood test."

Hudson, 266 Va. at 381-82, 585 S.E.2d at 589. If the trial court finds the driver has not carried his burden of proving physical inability, "the Commonwealth [is] relieved of any further burden[,] and no blood test [is] required to be given even if requested by the defendant." Id. at 382 n.7, 585 S.E.2d at 589 n.7.

Here, appellant testified that she had a chronic lung condition for which her doctor had given her medication and an inhaler a week prior to her arrest for the instant offense and that this condition rendered her physically unable to complete the breath test successfully. She provided no medical records or testimony from any other witness to substantiate her claim. She conceded that, despite her chronic condition, she had successfully completed a breath test on the occasions that led to her 1993 and 1996 DUI convictions.

The Commonwealth offered rebuttal evidence from Officer Kuzicks. He testified that when he first asked appellant if she had "any ailments," she responded only that she had some difficulties with her legs. Although appellant "said she had a problem" with the preliminary breath test when Kuzicks first tried to administer it, on appellant's second attempt, she "gave . . . plenty of air[] and [the preliminary breath test machine] worked like it was supposed to." Only after Kuzicks transported appellant to the police station, obtained appellant's consent for the official breath test, observed the mandatory twenty-minute waiting period for that test, and began to administer the test did appellant claim she had breathing difficulties. When asked how the amount of air required for a preliminary breath test "compare[s] to the amount [of air required by] the Intoxilyzer 5000," Officer Kuzicks responded, "It's the exact same type of breath system. It takes deep lung air."

Officer Kuzicks testified that, based on his training and three years of "experience . . . running the machine," he "believe[d] that [appellant] was not trying to give him a proper breath." Kuzicks so informed appellant and secured the presence of a magistrate, who instructed appellant

on the implied consent law. After an additional twenty-minute observation period, Kuzicks again attempted to administer the test. Appellant "went ahead and began blowing in the machine and then stopped. She did that for a period of three minutes, which resulted again as another deficient sample." Kuzicks testified that, each time he attempted to administer the test, appellant "was doing exactly what [he] said until [he] said, You're just about there. And every time [he] said, You're just about there, just a little bit longer, [appellant] would stop."

Based on this evidence, the trial court was entitled to reject as not credible appellant's testimony about her lung problem and to conclude she failed to meet her burden of proving she was physically unable to take the breath test. Here, as in Hudson, "the evidence in the record is sufficient to support [the trial court's] conclusion." Hudson, 266 Va. at 382, 585 S.E.2d at 589. Further, because appellant failed to prove she was physically unable to take the test, the Commonwealth was under no duty to prove it offered her a blood test or to provide the results of such a test as a prerequisite to prosecution. Id. at 381-82 & n.7, 585 S.E.2d at 589 & n.7.

III.

For these reasons, we hold that appellant's prior uncounseled conviction was entitled to a presumption of regularity and, thus, constitutionality. Because appellant offered no rebuttal evidence, we adhere to the presumption that the conviction did not result in an active or suspended jail sentence. Further, we hold the evidence supported the trial court's conclusion that appellant failed to prove she was physically unable to submit to a breath test. In the absence of such proof, appellant was not entitled to a blood test. Thus, we affirm the conviction.

Affirmed.