COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Ortiz, Raphael and White
Argued by videoconference


AARON DURAND JOHNSON

MEMORANDUM OPINION* BY
v.        Record No. 0055-24-1        JUDGE STUART A. RAPHAEL
APRIL 1, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge[1]

J. Barry McCracken, Assistant Public Defender, for appellant.

Robert D. Bauer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Arguing that the evidence against him should have been suppressed, Aaron Durand

Johnson appeals his convictions on conditional guilty pleas to possessing a firearm as a non-

violent felon within the past ten years and to driving while intoxicated (second offense within

five years). Johnson argues that the off-duty police officer who stopped him did so outside of his

jurisdiction and that the stop was unjustified as a citizen's arrest because Johnson had not

committed any breach of the peace. Johnson also complains that the off-duty officer improperly

used the "color of his office" both to detain him and to conduct a preliminary investigation. But

the evidence sufficed to show that Johnson committed a breach of the peace by driving at an

unsafe speed on a street whose sidewalks were crowded by reveling college students and other

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Honorable Everett A. Martin, Jr. presided over the motion to suppress hearing. The
Honorable Mary Jane Hall accepted Johnson's conditional guilty pleas providing for this limited
appeal.

pedestrians. And the evidence of Johnson's guilt on the two charges to which he pleaded guilty was collected independently by the two police officers who responded to the off-duty officer's call, not by the off-duty officer himself. Finding no error, we affirm the convictions.

BACKGROUND

We recite the facts in the light most favorable to the Commonwealth, the party that prevailed at trial. *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc). "Doing so requires that we 'discard' the defendant's evidence when it conflicts with the Commonwealth's evidence, 'regard as true all the credible evidence favorable to the Commonwealth,' and read 'all fair inferences' in the Commonwealth's favor." *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

On the night of October 29, 2022—the Saturday before Halloween—Portsmouth Police Officer Sam McKinley was returning to his home in Norfolk after completing his shift. He was still in uniform and was driving his marked police cruiser. As he made his way down Hampton Boulevard in Norfolk, near Old Dominion University, McKinley noticed more traffic than usual. Around 30 students and pedestrians filled the sidewalks, patronizing local restaurants and bars. Without objection, the trial court took judicial notice that the speed limit on Hampton Boulevard had been reduced to 30 miles per hour to protect college students who crossed the street.

McKinley, who was in the center lane, prepared to move into the right lane to make a right-hand turn. He checked his mirrors and his blind spot before changing lanes, noticing one car in the right lane far enough behind him not to pose a problem. As McKinley began to change lanes, however, that car sped past him, forcing him to swerve back into the center lane. McKinley did not know exactly how fast the car was going, but it was moving much faster than the flow of traffic around him.

- 2 -

Concluding that the driver's speed posed a danger to the public, including other motorists and the "students and partygoers" on the sidewalks, McKinley activated his emergency equipment and pulled over the driver, who turned out to be Johnson. McKinley knew that he was in Norfolk, not Portsmouth, but he was unsure if he was within the area of concurrent jurisdiction specified in the cities' mutual aid agreement. He later learned that he was about a quarter of a mile beyond that limit.

McKinley got out of his cruiser and approached Johnson's car, identifying himself as a police officer. McKinley noticed a strong smell of alcohol emanating from Johnson. When Johnson's foot slipped off the brake, McKinley directed Johnson to put the car in park and to turn off the engine. Johnson did not have a driver's license but handed McKinley an identification card.

McKinley then called for assistance from Norfolk police. While waiting for them to arrive, McKinley used a secondary police channel to see if Johnson had outstanding arrest warrants and to check the status of his driver's license. McKinley then ordered Johnson out of his car and performed what McKinley called "pre-" field-sobriety tests.[2]

Norfolk Police Officers Keegan and McMillan responded to McKinley's call. McKinley told them that he made the stop because Johnson had "cut [him] off" and was driving recklessly. The Norfolk officers then took over the investigation. The officers observed that Johnson's eyes were bloodshot and glassy. Johnson was swaying and slurring his speech, and he smelled of alcohol. After failing two field-sobriety tests, Johnson told the officers that he could not do the one-leg-stand test. They administered a preliminary breath test.

The Norfolk officers then arrested Johnson for driving while intoxicated and, while searching him, found a pistol in his waistband. A record check revealed that Johnson was a

---

[2] The record does not disclose what those "pre-" field-sobriety tests entailed.

- 3 -

convicted felon. The officers took him to be booked, but after Johnson complained of chest pain, they transported him to the hospital. Johnson fainted in the hospital lobby, appearing to have a seizure. A blood test taken as part of the medical response showed that Johnson was heavily intoxicated, with a blood-alcohol level between 0.18 and 0.20.

Johnson was charged with possessing a firearm as a convicted violent felon, carrying a concealed weapon without a permit, driving without a license (second offense), and driving while intoxicated (second offense within five years). Johnson moved to suppress all the evidence resulting from the stop, reasoning that McKinley conducted the stop outside of his jurisdiction, that Johnson's driving was insufficient to warrant a citizen's arrest, and that McKinley wrongfully used the indicia of his office to collect evidence.

Following an evidentiary hearing, the trial court issued a written order denying Johnson's suppression motion. The court found that McKinley conducted a proper citizen's arrest under *Hudson v. Commonwealth*, 266 Va. 371 (2003), because Johnson had committed a breach of the peace in McKinley's presence:

> [I]t can be reasonably deduced that Mr. Johnson was driving very quickly . . . on Hampton Boulevard, a major street . . . that bisects the campus of Old Dominion University[,] . . . an area in which there is heavy student pedestrian traffic with bars and restaurants . . . . If Mr. Johnson was oblivious to the presence of a marked police car in front of him, he might also have been oblivious to students attempting to cross the street on foot.

The court thereafter accepted Johnson's conditional guilty pleas to (1) a reduced charge of possession of a firearm by a non-violent felon within the past ten years (CR23000485-00) and (2) driving while intoxicated (second offense within five years) (CR23000485-03), preserving his right to appeal the denial of his suppression motion.[3] The court sentenced him to 6 years'

---

[3] In exchange for his guilty pleas, the Commonwealth nolle prossed the remaining charges.

imprisonment, with 3 years, 11 months, and 10 days suspended, plus a $500 fine. Johnson noted a timely appeal.

ANALYSIS

Johnson's sole assignment of error challenges the trial court's denial of his motion to suppress. "The defendant has the burden to show that, when viewing the evidence in the light most favorable to the Commonwealth, the trial court's denial of the motion to suppress was reversible error." *Sidney v. Commonwealth*, 280 Va. 517, 522 (2010). "We review de novo the trial court's application of the law to the particular facts of the case." *Branham v. Commonwealth*, 283 Va. 273, 279 (2012). But we are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc).

> A. *McKinley made a proper citizen's arrest after witnessing Johnson commit a breach of the peace.*

Johnson argues that he committed no breach of the peace in McKinley's presence that would justify a citizen's arrest under *Hudson*. Johnson says that "the only offense that McKinley . . . observed . . . was . . . speeding," and he accuses "the officer and the trial [court]" of "inflat[ing] the seriousness of [Johnson]'s driving to more than merely exceeding the posted speed limit by exaggerating the potential of actual perils to others that were not observed by the officer."

A police officer who conducts a stop outside of his territorial jurisdiction enjoys the same privilege as any other citizen to make an arrest. *Tharp v. Commonwealth*, 221 Va. 487, 490 (1980). "At common law, a private citizen may arrest another for a breach of the peace committed in his presence." *Hudson*, 266 Va. at 379. Our Supreme Court has defined "peace" as "the tranquility enjoyed by the citizens of a municipality or community where good order

- 5 -

reigns among its members," and its breach as "the offense of disturbing the public peace, or a violation of public order or public decorum." *Id.* at 379 n.6 (quoting *Byrd v. Commonwealth*, 158 Va. 897, 902-03 (1932)). A breach of the peace qualifying for a citizen's arrest need not be a felony; activity that would be a misdemeanor suffices, so long as the arresting citizen personally witnesses it. *Id.* at 379.

The Court in *Hudson* held that "dangerous conduct on a public highway" alone, without any indicia of intoxication, can be a breach of the peace. *Id.* at 380. The defendant there "almost r[a]n off the road" and an out-of-jurisdiction officer made the stop. *Id.* The officer had to veer off the road to avoid being struck. *Id.* The Court noted the "clear and present danger" the driver's conduct posed to the officer and to "any person or their property on or near the highway." *Id.* Driving "so as to imperil others clearly constituted a breach of the peace sufficient to justify a citizen's arrest." *Id.*

Officer McKinley likewise conducted a valid citizen's arrest after witnessing Johnson's "dangerous conduct on a public highway." *Id.* The trial court here made a factual finding that Johnson's excessive speed on a public street with sidewalks teeming with college students posed a public danger. That finding was well-supported by the evidence, taken in the light most favorable to the Commonwealth. Officer McKinley testified that Johnson "was driving at a speed that was extremely in excess for due regard to the safety of the public. That includes other vehicles, as well as students and partygoers [who] were occupying the sidewalk." We cannot say that the trial court's finding was "'plainly wrong' or without evidence" to support it. *McGee*, 25 Va. App. at 198.

### B. McKinley's actions after contacting the Norfolk police did not taint their investigation.

Johnson argued on brief that McKinley used "the color of his office" both to detain Johnson in the first instance and then to conduct a preliminary investigation, obtaining Johnson's

identification, using police channels to check his license status, and conducting at least "the preliminary procedures of a DWI investigation." Johnson claims that McKinley's detention and investigation using the color of his office was improper, requiring that all the resulting evidence be suppressed.

To start, our caselaw distinguishes between an officer using the color of office (1) to make an arrest and (2) to collect evidence. *Hudson* explained that the color-of-office "doctrine 'prohibits a law enforcement officer from using the indicia of his or her official position to collect evidence that a private citizen would be unable [to] gather.'" 266 Va. at 377 (alteration in original) (quoting *West Virginia v. Gustke*, 516 S.E.2d 283, 292 (W. Va. 1999)). Because the off-duty officer there used his color of office only to stop the defendant, not to collect evidence, the color-of-office prohibition was inapplicable. *Id.* Indeed, *Hudson* made clear that an off-duty officer may use the color of office, such as the "emergency lights" on his vehicle, *id.* at 373, to effectuate an otherwise valid citizen's arrest. The Court reasoned that if the facts justified a citizen to make an arrest, it would be "absurd to posit that a law enforcement officer, solely because he happens to be in uniform and in a police car, could not do so as well." *Id.* at 378.

And where an officer uses the color of his office to collect evidence, as we explained in *Wilson v. Commonwealth*, 45 Va. App. 193 (2005), "*Hudson* does not require the suppression of *any* evidence obtained by a police officer effecting a citizen's arrest. At most, it supports the suppression of 'evidence that a private citizen would be unable [to] gather' if the method the officer used to gather that evidence amounted to a constitutional violation." *Id.* at 204 (alteration in original) (quoting *Hudson*, 266 Va. at 377).

Having found that McKinley conducted a valid citizen's arrest based on Johnson's dangerous driving, we will assume without deciding that what McKinley learned from his later actions investigating Johnson would have been inadmissible under the color-of-office doctrine.

Under the facts here, however, the evidence collected by the Norfolk officers did not depend on anything that McKinley learned in his preliminary investigation.

McKinley testified that he called for the Norfolk police to respond *before* using his secondary police channels to check Johnson's driving status. One of the Norfolk officers who responded administered field-sobriety tests, which Johnson failed. In their search incident to arresting Johnson for driving while intoxicated, the Norfolk officers discovered a pistol in his waistband. And the Norfolk officers transported Johnson to the hospital after he complained of chest pain, where a blood sample showed Johnson's blood-alcohol level to have been between 0.18 and 0.20.

In short, any improper investigation by McKinley after he called the Norfolk officers had no bearing on the evidence the Norfolk officers independently collected to support the charges of driving while intoxicated and possession of a firearm by a convicted non-violent felon. The stipulation of facts supporting Johnson's guilty pleas on those charges makes no mention of any evidence collected by McKinley. Johnson's counsel properly acknowledged at oral argument that his suppression claim rises or falls based on whether McKinley conducted a valid citizen's arrest of Johnson.

CONCLUSION

Because McKinley conducted a valid citizen's arrest when he detained Johnson, the trial court properly denied Johnson's suppression motion. Thus, we find no basis on which to set aside Johnson's convictions.

*Affirmed.*