# CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Christopher A. Coakley

March 27, 2001

Case No. CR00004820

BY JUDGE LYDIA CALVERT TAYLOR

This matter came before the Court on January 30, 2001, for trial de novo on an appeal from the General District Court of charges of driving under the influence (DUI), second offense, and refusal. The Defendant, when queried, declined to have the two severed, but rather asked to have them tried at the same time. The evidence having been heard, the Court took the matter under advisement for resolution, after briefs on either side, of three legal issues: (1) Was the Defendant's arrest for DUI lawful under Virginia statutes and the U.S. Constitution? (2) If the arrest was unlawful under the Virginia Code or the U.S. Constitution, what is the remedy, that is, can the Defendant be tried for DUI? (3) If the arrest was unlawful, was the Defendant properly charged with refusing to submit to a breath or blood test after being arrested for DUI?

The Court finds that the Defendant's arrest for DUI was unlawful, as in violation of Virginia statutes, because the misdemeanor offense was not committed in the arresting officer's presence, but was not unconstitutional, given that it was supported by probable cause. Thus, the exclusionary rule for

an unconstitutional arrest does not apply, and the conviction stands, because the remedy for a statutory violation in Virginia is not suppression of the arrest itself, at least absent prejudice to the Defendant. However, Defendant was improperly charged with refusing to submit to a breath or blood test because he was not legally under arrest for DUI, since his arrest was in violation of the Virginia Code. Therefore, when he was read his implied consent rights under the implied consent statute, his refusal did not constitute a violation of that statute, which requires that a Defendant have been lawfully arrested to be subject to the statute's mandate. Having found sufficient evidence to show a violation of the DUI law, the Court finds Defendant guilty of that violation, but dismisses the refusal charge.

### *Factual Background*

On August 7, 2000, off-duty Virginia Beach police officer Leon J. Mook observed Defendant operating a motor vehicle in an extremely erratic manner. The officer observed the Defendant drive onto the sidewalk and the median; cross into oncoming traffic, each time almost causing head-on collisions; fail to stop for red lights; and drive in excess of the speed limit. The officer observed these events from Lesner Bridge on Shore Drive in Virginia Beach until the Defendant stopped his vehicle at a service station at the intersection of Brambleton Avenue and Church Street in the City of Norfolk. While following the Defendant, the officer transmitted his observations via his cellular phone to the Virginia Beach dispatcher, which information was transmitted, among others, to Officer M. C. Boone of the Norfolk Police Department. Boone came on scene at the aforementioned service station, where he observed the Defendant pumping gasoline into his vehicle.

Both officers provided similar accounts of their observations of the Defendant as he was pumping gas — the Defendant was swaying and appeared to be unable to stand without the support of his vehicle. Officer Boone approached the Defendant and observed that the Defendant had bloodshot eyes and a strong odor of alcohol about his person, and that a one-quarter-full bottle of cooking sherry was on the front seat of the Defendant's vehicle. Officer Boone decided not to perform any sobriety tests because he believed the Defendant was so intoxicated that there would have been a risk of injury. The Defendant was placed under arrest and subsequently refused to provide a blood or breath sample.

*Discussion*

*Warrantless Arrest for DUI*

Did the Defendant commit a crime in Officer Boone's presence that would permit a warrantless arrest pursuant to Code of Virginia § 19.2-81 and § 18.2-266?

Code of Virginia § 19.2-81 provides in pertinent part that an officer "may arrest, without a warrant, any person who commits a crime in the presence of the officer." This statute has been interpreted to require that the officer must have "personal knowledge acquired by his personal senses that an offense was committed in his presence." *Durant v. City of Suffolk*, 4 Va. App. 445, 447, 358 S.E.2d 732, 733 (1987). The Court of Appeals in *Durant* held that, because the defendant was arrested for a misdemeanor committed outside the arresting officer's presence, his warrantless arrest was unlawful, and as a consequence, the result of the Breathalyzer test was inadmissible. *Id.* at 449, 358 S.E.2d at 734. The Suffolk chief of police, who was driving his personal car, had observed the defendant driving erratically and called on his radio for assistance from the nearest mobile unit. Another officer stopped the defendant approximately two miles into Isle of Wright County, but did not observe the defendant drive in Suffolk. The Breathalyzer test result was admitted over the defendant's objection, and he was convicted of driving under the influence of alcohol. The Court of Appeals stated, "Except in those instances specified in Code § 19.2-81, a legal warrantless arrest cannot be effectuated based upon the officer having information from others which leads him to believe an offense is being committed in his presence. The facts constituting probable cause to arrest for an offense committed in his presence must have been obtained by the officer through his own personal senses." *Id.* at 447, 358 S.E.2d at 733-34. The court held that, because the defendant's warrantless arrest was unlawful, he was not bound under the implied consent law to submit to a Breathalyzer test. Therefore, the Breathalyzer test result should not have been admitted into evidence, and the court held that this error was not harmless beyond a reasonable doubt, reversing and remanding the defendant's conviction.

In the instant case, Officer Boone observed the Defendant swaying, so intoxicated that he was unable to stand without the support of his vehicle, with bloodshot eyes and a strong odor of alcohol. On these facts, Officer Boone, based on his own personal knowledge, could have arrested the Defendant for violating Virginia Code § 18.2-388, intoxication in public; however, whether Officer Boone could arrest the Defendant for driving under the influence, in

violation of § 18.2-266, is more problematic. That DUI statute, Virginia Code § 18.2-266, states in part:

> It shall be unlawful for any person to drive or operate any motor vehicle, engine, or train (i) while such person has a blood alcohol concentration of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath as indicated by a chemical test administered as provided in this article, (ii) while such person is under the influence of alcohol. . . .

Virginia Code § 46.2-100 defines "operator" or "driver" as "every person who either (i) drives or is in actual physical control of a motor vehicle on a highway or (ii) is exercising control over or steering a vehicle being towed by a motor vehicle."

Code § 19.2-81, § 18.2-266, and § 46.2-100 read together, require that an individual "drive or operate," or be in actual physical control of a motor vehicle "in the presence of the arresting officer" for the arrest to be valid.[1] Here, the arresting officer, Officer Boone, never actually saw the Defendant driving, but rather saw him out of the car and attempting to pump gasoline.

Virginia courts have considered several situations in which defendants have claimed they were not driving, operating, or in actual physical control of vehicles. The Supreme Court considered one scenario in *Overbee v. Commonwealth*, 227 Va. 238, 315 S.E.2d 242 (1984). The arresting officer saw a pickup truck parked in the emergency lane of Interstate 95. The trooper approached the truck and saw the defendant standing at the front of the vehicle. The truck hood was up, the engine was not running, and the trooper could not remember if the keys were in the ignition. The defendant said he had removed the ignition key to unlock the hood. There was another person sitting in the passenger seat. *Id.* at 240, 315 S.E.2d at 243. The Supreme Court held that because the defendant was not in the vehicle, the engine was not running, and the ignition key had been removed, the defendant was not in "actual

---

[1] Defendant cites *Roberts v. Commonwealth*, 28 Va. App. 401, 504 S.E.2d 890 (1998), for the proposition that "a gas station is private property and does not give rise to invoke the implied consent law of Virginia." *Roberts*, unlike the instant case, evaluates § 46.2-100, driving after having been adjudged a habitual offender, not DUI. The Court of Appeals in *Roberts* held that the defendant was not operating a motor vehicle on a "highway" as defined by § 46.2-357 when an officer observed the defendant driving a van through a parking lot of a 7-Eleven convenience store. The term "highway" is not included in the DUI statute, and the court in *Roberts* did not address the implied consent law.

physical control of the vehicle while standing in front of it on the highway," and thus the defendant was not operating his truck when the trooper approached and arrested him. *Id.* at 243, 315 S.E.2d at 244. The Supreme Court noted that the defendant's "possession of the keys may have given him the means of effecting control over the truck," but that he was not in actual physical control. *Id.*

The Court in *Overbee* held further that the results of the breath test were inadmissible because there was no evidence that the defendant had been arrested within two hours of the alleged offense. The Court reversed and remanded the defendant's conviction, because the state of the evidence of driving under the influence, without the evidence of the Breathalyzer certificate of analysis, was unclear. Although the Court could not say "that the evidence, exclusive of the certificate of analysis, was insufficient as a matter of law to support . . . [the] conviction," it also could not say, "that the evidence, without the certificate, was so overwhelming as to render harmless the error in admitting the certificate." Thus, the unlawful arrest did not lead to suppression of the arrest itself, and a dismissal, but rather to suppression of the Breathalyzer certificate of analysis, whose admissibility — as in the evidence of refusal — depends on an arrest that was lawful.

In *Overbee*, the Supreme Court summarized other scenarios in which courts have held that defendants were "operating" vehicles. In *Gallagher v. Commonwealth*, 205 Va. 666, 139 S.E.2d 37 (1964), a police officer found the defendant sitting in his car, which was stuck in a ditch. The car was in gear, and the defendant was accelerating the engine. In *Nicolls v. Commonwealth*, 212 Va. 257, 184 S.E.2d 9 (1971), defendant was found slumped over the steering wheel. Although a broken transmission rendered his car inoperable, the car was on the road and its engine was running. In *Williams v. Petersburg*, 216 Va. 297, 217 S.E.2d 893 (1975), the defendant was found sitting behind the steering wheel of a wrecked car. In each of these cases, the defendant was in the driver's seat and in control of the vehicle when the police found him.

In *Leake v. Commonwealth*, 27 Va. App. 101, 497 S.E.2d 522 (1998), the defendant asserted that he was not "operating" his vehicle when the police officer approached it. The arresting officer approached a pickup truck stopped in the travel lane of an exit ramp. Both doors of the truck were open, the engine was running, and the headlights and taillights were illuminated. The defendant was bending over into the interior compartment of the truck and placing a long knife underneath the floorboard mat. The defendant told the arresting officer that he was cleaning the truck and that he was alone. *Id.* at 104, 497 S.E.2d at 524. The Court of Appeals held that because the truck's

engine was running and part of the defendant's body was inside the interior of the truck, the defendant was in "actual physical control" of the truck and was thus "operating" the truck. *Id.* at 109, 497 S.E.2d at 526.

In the instant case, when the arresting officer approached the Defendant, the Defendant was standing outside the vehicle pumping gasoline. At the time the officer approached the Defendant, the Defendant was not in actual physical control of the vehicle and therefore was not "operating" the vehicle in the arresting officer's presence. Although it could be inferred that the Defendant drove the vehicle into the gas station parking lot, the "presence" requirement of § 19.2-81 was not met, and therefore the Defendant's warrantless arrest was unlawful, as in violation of that statute.

## *Remedy for Unlawful Warrantless Arrest*

If the defendant's arrest was unlawful under § 19.2-81 and § 18.2-266, what is the appropriate remedy: (1) suppression of evidence gained from the arrest; (2) suppression of the arrest itself, meaning a dismissal of the charge; or (3) suppression of any evidence gained, such as the breathalyzer certificate of analysis or the refusal to take the breathalyzer test, that was obtained under a statute requiring a lawful arrest for the requiring of such consent? This Court believes only the third is the proper result.

The Court of Appeals considered such a circumstance in *Penn v. Commonwealth*, 13 Va. App. 399, 412 S.E.2d 189 (1991). The defendant in *Penn* was convicted of possession of cocaine and argued that the trial court erred in failing to suppress evidence obtained as a result of his illegal arrest. The Court of Appeals affirmed, holding that, although the defendant was illegally arrested according to state law, the fruits of that arrest were not subject to suppression. *Id.* at 407, 412 S.E.2d at 194. A Lynchburg police officer was working surveillance and relayed information by radio to another police officer that the defendant threw a bottle onto the parkway area. The second officer, who did not see the defendant throw the bottle, told the defendant that he was going to receive a summons for littering. The officer asked the defendant for identification, and, when the defendant replied that he did not have any, the officer placed the defendant under arrest and patted him down, discovering thereby a small brown packet of cocaine in the defendant's sock. *Id.* at 401, 412 S.E.2d at 190. The Court of Appeals cited the standard articulated in *Durant*, and found that the arresting officer did not observe the defendant litter in the officer's presence, or otherwise acquire knowledge through his personal senses that the defendant committed an offense. The court held that the "in the presence" requirement of § 19.2-81 had not been

met and that the arrest was invalid. The court rejected the Commonwealth's argument that there existed a "police team" qualification to the "in the presence" requirement for misdemeanor arrests. *Id.* at 406, 412 S.E.2d at 193.

Once the court in *Penn* found the arrest invalid, it considered the issue of whether the evidence seized in the search pursuant to the arrest was admissible. Pointing out that not every violation of § 19.2-81 necessarily results in the exclusion of evidence, the court held that, where an illegal arrest under § 19.2-81 does not violate any constitutional rights, the defendant is not entitled to have evidence seized pursuant to that arrest excluded. *Id.* at 406, 412 S.E.2d at 193 (citing *Thompson v. Commonwealth*, 10 Va. App. 117, 121, 390 S.E.2d 198, 200-01 (1990)). The clear impact of *Penn* is that the exclusionary rule does not operate to exclude evidence where the defendant claims that rights provided to him under the state statute have been violated, but fails to allege or prove a deprivation of constitutional rights because, under Virginia law, no suppression of evidence is required when evidence is obtained in violation of state law but without a constitutional violation. The court in *Penn* held that the arrest did not implicate the defendant's Fourth Amendment rights because probable cause is the standard for testing the constitutional validity of the arrest. In *Penn*, the arresting officer had probable cause to arrest the defendant for littering based on the radio message relaying personal observations of the first officer. The court thus held that the trial court properly admitted the evidence obtained from the search. *Id.* at 408, 412 S.E.2d at 194.

Defendant cites *White v. Commonwealth*, 24 Va. App. 234, 481 S.E.2d 486 (1997), *aff'd en banc*, 25 Va. App. 662, 492 S.E.2d 451 (1997), for the proposition that the "police team" approach has been specifically rejected in Virginia. Defendant misstates the court's holding. In *White*, three police officers were on duty riding together in a patrol car. One officer observed a group of five to ten males in a semicircle. As the officers approached they heard a shout of "5-0," a street term for police, and the entire group of men ran. One officer, Nesselrode, recognized the defendant and observed him make a downward movement, open his fist, and observed a large white object fall out of the defendant's hand onto the ground. The officer retrieved the object, later determined to be cocaine. The other two officers followed the rest of the men and found the defendant sitting on the steps of one of the houses. One of the two officers, Soyers, knew the defendant and called in a warrant check; Nesselrode heard the call and radioed Soyers and inquired whether Soyers had the defendant in custody. Soyers replied affirmatively, and Nesselrode told Soyers to bring the defendant around the front of the building and that Nesselrode "got the dope that he dropped." Nesselrode arrested the

defendant on the basis of the cocaine that the defendant had dropped and Nesselrode had retrieved. The officers also found a stocking cap containing money and a pager on the defendant's person. The defendant also made an incriminating statement. *Id.* at 237-38, 481 S.E.2d at 487-88.

The defendant argued that his initial detention was an unreasonable seizure and that consequently the pager, stocking cap and contents, and statement should have been suppressed. The Court of Appeals held that the ultimate search and arrest of the defendant was based on probable cause provided by Nesselrode. Nesselrode's order to detain the defendant provided probable cause to the other two officers because Nesselrode's knowledge constituted collective knowledge with the other officers. *Id.* at 239, 481 S.E.2d at 488. The defendant argued that the Court of Appeals in *Penn* rejected the notion of collective knowledge or "police team" exception. The court in *White* restated the *Penn* holding that, although a warrantless arrest for a misdemeanor committed outside the presence of the arresting officer is not valid where the arrest is based upon information conveyed to the arresting officer by the witnessing officer, if the arrest does not violate the Fourth Amendment, the defendant is not entitled to have evidence seized pursuant to that arrest excluded. The court held that the officers had probable cause to arrest the defendant based on the probable cause imputed to them by Nesselrode's personal observations and held that the evidence was properly admitted. *Id.* at 240-41, 481 S.E.2d at 489.

In the instant case, the Defendant's Fourth Amendment rights were not violated because the arresting officer had probable cause to arrest him. That evidence included both the observations of Officer Mook, as relayed to Officer Boone through the Norfolk police dispatcher, and Officer Boone's personal observations of the Defendant's condition. Therefore the arrest was constitutionally valid.

It should be noted that the major difference is that an arresting officer constitutionally may rely on hearsay, if reasonable, to establish probable cause, but may not do so for a misdemeanor arrest to be valid under the Virginia statute. In his March 6, 2001, brief to the Court, Defendant accuses the arresting officer of lying to the magistrate in his sworn affidavit and asserts that the arrest violated the Defendant's constitutional rights. The Defendant attempts to quote the officer's testimony at trial, but no transcript has been typed up of the January 30, 2001, trial for the Court. The Court did not find Officer Boone intended to mislead the magistrate. The affidavit states that it was based on "statements made to me by Officer Leon J. Mook of the Virginia Beach Police Department." This statement may be inaccurate, in that Officer Mook's statements were relayed to Officer Boone through the Norfolk police

dispatcher, but the distinction is of no consequence as there is no requirement that Officer Boone hear the information directly from Officer Mook rather than through the dispatcher. The information was still hearsay, and the magistrate was still required to evaluate the hearsay's reliability. Officer Mook was a police officer informant (as opposed to a citizen informant) providing information to the Norfolk Police dispatcher about an offense he was personally witnessing. The good-faith exception to the exclusionary rule applies in this case because there is no evidence that the officer was dishonest or reckless in preparing his affidavit or could not have "harbored an objectively reasonable belief in the existence of probable cause." *Corey v. Commonwealth*, 8 Va. App. 281, 290, 81 S.E.2d 19, 23 (1989).

There is no case law to support the proposition that the *case itself* was the "fruit of the poisonous tree" and should be dismissed. All of the evidence the Commonwealth relied upon to convict the Defendant of driving under the influence was obtained prior to the Defendant's arrest and therefore the DUI case itself need not be dismissed.

The Defendant cites *Hayes v. Florida*, 470 U.S. 811 (1985), for the proposition that "the non-consensual custody of taking a person from his home or other place and transporting him to the station even for brief investigation when the police are not able to arrest at the scene is constitutionally forbidden." The Supreme Court in *Hayes* reversed the defendant's convictions because the police had *no probable cause* or a warrant to arrest the defendant, nor the defendant's consent to transport him to the police station for fingerprinting. The resulting investigative detention violated the defendant's Fourth Amendment rights, and the fingerprints were inadmissible fruits of the poisonous tree. In the instant case, the police officer had probable cause to arrest the Defendant, and therefore the Defendant's Fourth Amendment rights were not violated.

### Suppression of Certificate of Analysis/Refusal

The situation is the opposite for the refusal, the action of which only occurred after the unlawful arrest and which, by statute, was only unlawful if refused after a lawful arrest in compliance with Virginia law. Had the Defendant consented to a breathalyzer or blood alcohol test here, the certificate of analysis itself would have been inadmissible because it was not obtained pursuant to a lawful arrest; by analogy, any refusal to take such a test also must be excluded. Virginia Code § 18.2-268, the statute governing admission of certificates of analysis, provides for the exclusion of evidence taken in violation of its provisions. *See Durant*, 4 Va. App. 445, 448-49. The

Defendant's arrest in the instant case was invalid, and he therefore could not be deemed to have consented to the testing of his breath or blood under Virginia's implied consent law. The Defendant in fact refused to submit to a breath or blood test, but because his arrest in this case was invalid under § 19.2-81 and § 18.2-266, although valid under the Fourth Amendment, he was not required by Virginia's implied consent statute to submit to breath or blood tests. Thus Defendant's refusal to submit to such testing was not unreasonable, as he had not been lawfully arrested under the implied consent statute and thus could not be bound by the statute's mandate. The Defendant, therefore, is found by this Court to be not guilty of the refusal violation.

## Conclusion

Although the Defendant's arrest for DUI violated Virginia statutes, the arrest was supported by probable cause and therefore did not violate the Defendant's constitutional rights. The evidence of the Defendant's driving under the influence, all gained prior to his arrest, however, support beyond a reasonable doubt his conviction of DUI second offense. However, since the Defendant was arrested for DUI in violation of Virginia statutes, his refusal to submit to breath or blood testing was not unreasonable, and the refusal charge is dismissed.

The Court thanks counsel for agreeing to continue this case from the control date of March 20, 2001, to April 27, 2001, at 2:00 p.m. for either dismissal or sentencing. Because this opinion letter results in convicting the Defendant of one of the charges, sentencing will take place at the April 27 hearing. No presentencing report has been ordered.