# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Lindsey Borek

August 4, 2005

Case No. 05-128

BY JUDGE EDWARD L. HOGSHIRE

In her appeal from a conviction in the General District Court, Lindsey Borek has filed a motion to suppress evidence obtained against her. An initial evidentiary hearing was held on the motion on June 27, 2005. Briefs were submitted to the Court and the motion was argued further on July 11, 2005. After due consideration of the applicable law and arguments presented, the Court denies the motion in part and grants it in part.

## Statement of Facts

The facts of the case are largely undisputed. For purposes of this motion, the Court will utilize the "Statement of Facts" contained in the Commonwealth's brief dated June 29, 2005, supplemented by Defendant's "Statement of Facts" dated July 11, 2005. At the July 11 hearing, the parties concluded that the only discrepancy between the two accounts was with the statement that Defendant made to Officer Acord upon handing him a Cabela's credit card. The Commonwealth agreed to stipulate that Defendant stated that the card "had her information."

On April 10, 1987, the University of Virginia Police Department and Charlottesville Police Department entered into a Memorandum of Agreement appointing UVA officers as "special City police officers," pursuant to Va. Code § 19.2-17. In an effort to address various public safety issues in areas of the City where a large proportion of University students lived and socialized, the special officers were to have concurrent jurisdiction with the City officers within a "Cooperative Patrol Area." Later that month, this Court entered an order approving the plan and effecting the Memorandum. Subsequent to these events, Code § 19.2-17 was repealed by the General Assembly, although Va. Code § 15.2-1726 and § 23-234, both of which deal with similar jurisdictional agreements, remain in force.

On September 9, 2004, Officer C. D. Acord of the University of Virginia Police Department was on patrol in the "Corner" district of Charlottesville. Officer Acord testified that at approximately 2:00 a.m., he noticed Defendant's car traveling at a high rate of speed, although he utilized neither his radar nor odometer, and was unable to predict how fast she was traveling. When he witnessed Defendant make a rolling stop before turning right on red at the intersection of Main and 10th Street, Acord activated his lights and pulled her over. He testified that as Defendant pulled to the side of the road, she crossed a bike path and pulled her right-side tires over the curb. According to the officer, when he approached the driver's side window, he smelled alcohol and noticed that Defendant had bloodshot eyes and was speaking "fast." Defendant produced only a Cabela's credit card for purposes of identification, and was unsteady on her feet upon exiting the vehicle. When Acord asked Defendant whether she had been drinking, she responded that she had had two beers that night. Officer Acord testified that he next requested that Defendant perform several field sobriety tests. She completed these tests with varying degrees of success, and was next offered a PBT test. Defendant blew a .24, and was at that point arrested and taken to jail where she performed a breath analysis test.

Officer Acord testified at the hearing that he had received no indication that the Memorandum of Agreement was invalid or otherwise not in full force. Defendant now moves to suppress the evidence obtained against her on the grounds that the Memorandum of Agreement is invalid or, in the alternative, that the terms of the Agreement were exceeded, that the citizen's arrest and "under color of office" doctrine were violated, and that the breath test was illegally performed.

*Questions Presented*

1. Whether the Memorandum of Agreement and Circuit Court Order are invalid as violations of Virginia statute, rendering the arrest illegal as effected outside of the officer's jurisdictional limits.

2. If the arrest was illegal, whether it also amounted to a constitutional violation, triggering the exclusionary rule as the appropriate remedy.

*Analysis*

The 1987 Memorandum of Agreement and Circuit Court Order referred to above were executed explicitly in accordance with Va. Code § 19.2-17, which gave the courts authority to appoint "special policemen" to work in specific areas of the Commonwealth. The statute was repealed in 1996, but is survived by several similar provisions. Code § 23-234 reads, in relevant part:

> A campus police officer appointed as provided in § 23-233 or appointed and activated pursuant to § 23-233.1 may exercise the powers and duties conferred by law upon police officers of cities, towns, or counties . . . (iv) upon approval by the appropriate circuit court of a petition by the local governing body for concurrent jurisdiction in designated areas with the police officers of the county, city, or town in which the institution, its satellite campuses, or other properties are located. The local governing body may petition the circuit court pursuant only to a request by the local law-enforcement agency for concurrent jurisdiction.

Va. Code § 23-234.[1] In addition, § 15.2-1726 states:

> Any locality may, in its discretion, enter into a reciprocal agreement with . . . police of any state-supported institution of higher learning appointed pursuant to § 23-233 . . . for such periods and under such conditions as the contracting parties deem advisable.

---

[1] Other provisions of the statute, such as those giving campus police officers authority to arrest on property adjacent to the university or while in close pursuit of a fleeing suspect, are not implicated in the present case.

Va. Code § 15.2-1726. The Commonwealth argues that, although § 19.2-17, upon which the Agreement was initially based, has been repealed by the legislature, the Memorandum and Order nevertheless remain in effect by virtue of their satisfaction of the two above-cited statutes. In contrast, Defendant maintains that the two documents are in violation of the provisions of § 23-234 and § 15.2-1726.

Code § 23-234(iv) contains an explicit provision that, in order to secure a circuit court order granting concurrent jurisdiction, the local law-enforcement agency must request that the local governing body petition the court on its behalf. Likewise, § 15.2-1726 states that a *locality* is authorized to enter into a reciprocal agreement consolidating law-enforcement jurisdiction. The Memorandum of Agreement and Circuit Court Order at issue in this case both fail to adhere to the clear terms of the statutes. The first line of the Memorandum states that the respective *police departments* have agreed to its terms, and the only signatories to the document are the chiefs of each department. Similarly, the Order indicates that only the chiefs of the Charlottesville and UVA police departments, by counsel, appeared before the Court. Although the Charlottesville City Attorney signed the Order, he did so explicitly as counsel for the Charlottesville Chief of Police, and made no representation on behalf of the actual governing body of the locality. *See, e.g., City of Richmond v. Confrere Club*, 239 Va. 77 (1990). As a result, the two documents fail to conform to the mandates of either § 23-234 or § 15.2-1726, and conferred no valid jurisdictional authority upon Officer Acord. Therefore, the arrest in question was conducted beyond the officer's jurisdictional limits and was not a lawful arrest.

Because the arrest was illegal, the certificate of breath analysis may not be introduced as evidence. In order for Va. Code § 18.2-268.2, the "implied consent" law, to take effect, an individual must be the subject of a lawful arrest; otherwise, the evidence of a breath test is inadmissible at trial. *See Smith v. Commonwealth*, 32 Va. App. 228, 233-34 (2000) ("If the arrest is not lawful, consent for blood alcohol testing is not implied, and the results of any such test are not admissible for the purpose of providing a rebuttable presumption of intoxication."); *Durant v. Suffolk*, 4 Va. App. 445, 448-49 (1987); *Commonwealth v. Coakley*, 56 Va. Cir. 99, 107 (Norfolk 2001) ("Had the Defendant consented to a breathalyzer or blood alcohol test here, the certificate of analysis itself would have been inadmissible because it was not obtained pursuant to a lawful arrest."). The implied consent law is a statutory modification of the common law, and is therefore to be strictly construed against the Commonwealth in this

case. *See, e.g., Boyd v. Commonwealth*, 236 Va. 346, 349 (1988). Importantly, the certificate is inadmissible *not* because a constitutional violation occurred, but rather because the case law interpreting the implied consent statute creates an independent basis for exclusion by *specifically calling for such a remedy*. *See Commonwealth v. Addison*, 36 Va. Cir. 411, 415 (Fairfax County 1995), *affirmed*, 1996 Va. App. LEXIS 638; *Overbee v. Commonwealth*, 227 Va. 238, 242 (1984).

The Commonwealth argues that, even if the arrest were unlawful under statute, the breath certificate should nevertheless be admitted as obtained pursuant to a valid common law citizen's arrest. However, the officer's conduct cannot be construed as a proper citizen's arrest, because the factual prerequisites for such action were missing. Defendant was pulled over for potentially speeding and making a rolling stop before turning right on red. These violations do not constitute a "breach of the peace," which is necessary in order for any individual to effect a citizen's arrest. *See, e.g., Hudson v. Commonwealth*, 266 Va. 371, 380 (2003) (finding a breach of the peace where the defendant's vehicle was swerving across lanes of traffic and almost rear-ended the off-duty officer); *Byrd v. Commonwealth*, 158 Va. 897 (1932) (holding that a breach of the peace is "the offense of disturbing the public peace or a violation of public order or public decorum"). It follows that Officer Acord could only have made a custodial stop for minor traffic violations in his official capacity as a University police officer, rather than as a private citizen, and that the breath certificate may not be admitted under the citizen's arrest theory.

Defendant maintains that the remainder of the evidence gathered by Officer Acord must be suppressed due to a violation of citizen's arrest law. However, in Virginia, the Fourth Amendment's exclusionary rule operates only to exclude evidence collected in contravention of constitutional guarantees; state law violations do not necessarily mandate suppression. *See Penn v. Commonwealth*, 13 Va. App. 399 (1991), *aff'd per curiam*, 244 Va. 218 (1992); *Horne v. Commonwealth*, 230 Va. 512, 519 (1986); *Thompson v. Commonwealth*, 10 Va. App. 117, 122 (1990) ("Although states are free to impose greater protections for an arrest than those embodied in the federal constitution, by imposing such a requirement, the States do not thereby also create a right of constitutional dimension."). Extra-jurisdictional arrests, be they violations of state statute or common law citizen's arrest doctrine, do not warrant the suppression of evidence in most

cases.[2] *See, e.g., Wright v. Commonwealth*, 1997 Va. App. LEXIS · 738[3] (holding that, where the officer arrested the defendant outside. of his jurisdiction and in excess of the common law authority to effect a citizen's arrest, the officer nevertheless had probable cause to constitutionally detain the defendant and the evidence was not suppressed); *Layne v. Commonwealth*, 15 Va. App. 23 (1992). In this case, because Officer Acord was acting as an on-duty, licensed law enforcement officer and witnessed Defendant commit a traffic violation, he possessed the requisite probable cause to make a constitutionally sound arrest. *See Atwater v. City of Lago Vista*, 532 U.S. 318 (2001) (holding that that, if an officer has probable cause to believe that a suspect has committed even a minor criminal offense in his presence, he may arrest the individual consistently with the Fourth Amendment). Although the arrest offended Virginia's jurisdictional statute and cannot be properly classified as a citizen's arrest, it did not rise to the level of a constitutional violation, and the exclusionary rule is therefore not triggered.

Even if this were not the case, the evidence would also be admissible under the "good faith exception" to the Fourth Amendment's exclusionary rule. *See Illinois v. Krull*, 480 U.S. 340, 342 (1987) (holding that the exclusionary rule "does not apply to evidence obtained by police officers who acted in objectively reasonable reliance" upon a statute later held unconstitutional); *United States v. Leon*, 468 U.S. 897 (1984); *Corey v. Commonwealth*, 8 Va. App. 281 (1989); *Walls v. Commonwealth*, 2 Va. App. 639 (1986). The Charlottesville and UVA police departments had been working effectively within their established cooperative patrol area for years without objection, and Officer Acord testified that he had no idea that the arrangement was in any way defective. Police officers operating on the street cannot be held responsible for changes in

---

[2] *Wilson v. Commonwealth*, 45 Va. App. 193, 204-05 (2005), refers to the suppression of evidence collected in violation of the "under color of office" doctrine, which prevents a law enforcement officer carrying out a citizen's arrest from using the indicia of his official authority to collect evidence. The instant matter is distinguishable because a proper citizen's arrest never occurred in the first place, and therefore the "under color of office" doctrine is not similarly implicated.

[3] The Court is aware that, pursuant to Va. Code § 17.1-413, this unpublished opinion is of minimal precedential value. However, given the similarity of the facts to the case at bar, the court of appeals' reasoning is instructive on the issue of citizen's arrests and admissibility of evidence.

procedural technicalities, and it follows that no deterrent function would be served by suppressing the evidence in this case.

## Conclusion

In accordance with the foregoing analysis, Defendant's motion is denied in part and granted in part. The certificate of breath analysis is inadmissible into evidence because of the strict requirements accompanying the implied consent law. However, the remainder of the evidence obtained by Officer Acord is admissible at trial because it was not gathered in violation of the Fourth Amendment.