# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Commonwealth of Virginia

v.

Joseph Thompson

November 10, 2005

Case No. (Criminal) 05-131

BY JUDGE EDWARD L. HOGSHIRE

Defendant Joseph Thompson has filed a Motion to Suppress evidence obtained against him. An evidentiary hearing was held on August 16, 2005, and both the Defendant and the Commonwealth submitted briefs. On the grounds set forth below, the Court denies the motion in part and grants it in part.

## Statement of Facts

For the purpose of this Motion to Suppress, the Court will utilize the facts as presented in the August 16, 2005, hearing. At the hearing, the Defendant conceded that for determination of this Motion, the facts are as stated by the officer. (Oral Argument Trans., 9 [hereinafter Trans.].) The Defendant also relied on those facts in his Brief in Support of the Motion to Suppress. (Defendant's Brief, 2.)

On April 10, 1987, the University of Virginia ("UVA") Police Department and the Charlottesville Police Department entered into a Memorandum of Agreement appointing UVA officers as "special city police officers," pursuant to Va. Code § 19.2-17. In an effort to address various public safety issues in areas of the City where a large number of UVA students lived and socialized, the special officers were to have concurrent jurisdiction with the City officers within a "Cooperative Patrol Area." Later that month, this Court entered an order approving the plan and implementing the Memorandum. This code provision was repealed by the General Assembly in 1996, but similar agreements, found in Va. Code § 15.2-1726 and § 23-234, remain in force.

On September 5, 2004, Officer Martin of the UVA Police Department was on patrol covering the UVA campus and parts of the City of Charlottesville. Officer Martin was in a marked UVA police car and was wearing a UVA police uniform. The officer stated that when he spotted the defendant's vehicle, he knew he was outside of the patrol area of the UVA Police Department but that he believed he was authorized to patrol this area under the cooperative patrol agreement with the City of Charlottesville. (Trans., 52.) Officer Martin was instructed on this agreement when he joined the UVA police force in 2001. (Trans., 63.) The officer stated that he believed, if he saw an offense occur in his presence while traveling from one jurisdiction to another, even where it was outside of UVA's geographical limits, he could make a valid arrest. (Trans., 52.)

While operating his vehicle on 13th Street at approximately 1:30 a.m., the officer saw a "jeep-styled" vehicle make a right turn from Wertland Street onto 13th Street. (Trans., 37.) The officer noted that 13th Street is narrow, particularly where it connects with Wertland, with just enough room for two cars to pass each other but leaving only about two feet between the cars. (Trans., 53-55.) Although the speed limit is 25 miles per hour (Trans., 56), Officer Martin estimated the jeep to be traveling at a "high rate of speed," having heard the tires make a squealing noise as the vehicle came around the corner. (Trans. 37.) The officer had to brake abruptly because he was afraid the jeep vehicle would hit him "head on." (*Id.*) Officer Martin estimated the vehicle's speed at approximately 15 miles per hour (Trans., 56), which he deemed excessive despite the speed limit given the conditions.

The officer yelled at the driver through his window, telling him to stop and pull over. (Trans., 38.) When the vehicle failed to stop, the officer activated his emergency lights and turned to watch the vehicle enter a parking garage behind the Red Roof Inn. (*Id.*) Officer Martin lost sight of the vehicle for about five seconds as it entered the garage. (Trans., 57.) He then drove into the garage, saw the jeep in question and observed the Defendant, Joseph Thompson, walking about ten feet away from the vehicle. (Trans., 38-39.) The Defendant

was about to enter the Mellow Mushroom restaurant when the officer approached him and either asked to speak with him or asked him to stop. (Trans., 39.) When confronted by the officer, the Defendant admitted he had been driving the jeep and that he had just turned onto 13th Street from Wertland. (Trans., 40.) During this conversation, Officer Martin noted that there was an odor of alcohol coming from the Defendant, that his speech was slightly slurred, and that his eyes were glassy and bloodshot. (*Id.*)

The officer acknowledged that, once he identified the Defendant as the driver of the vehicle, he could have arrested him for reckless driving but that he investigated further because he suspected a driving under the influence offense. (Trans., 64.) Officer Martin asked the Defendant whether he had been drinking, and the Defendant admitted that he had had three beers between 6 p.m. and 1 a.m. (Trans., 51.) The officer then asked the Defendant to perform some field sobriety tests to which the Defendant consented. (Trans., 41.) Officer Martin then offered the Defendant a PBT test, which the Defendant took and which was positive for alcohol. (Trans., 48.) At this point, Officer Martin arrested the Defendant, handcuffed him, and brought him to jail where the Defendant provided a breath sample. (Trans., 49.)

## Questions Presented·

1. Was the initial stop of the Defendant a valid citizen's arrest for breach of the peace?

2. If the officer made a valid citizen's arrest, does the "color of office" doctrine apply to the ensuing investigation? If so, were the Defendant's rights under the Fourth and Fifth Amendments of the United States Constitution violated triggering the exclusionary rule?

3. Even if the arrest and the investigation were unconstitutional under the Fourth and Fifth Amendments, does the good faith exception to the exclusionary rule apply?

4. Does the implied consent law apply in this case?

## Analysis

The Court notes at the outset that this case raises very similar questions of law and fact as *Commonwealth v. Borek*, 68 Va. Cir. 323 (2005). That case also dealt with an extra-jurisdictional arrest made by a UVA police officer acting under the belief that the 1987 Memorandum of Agreement between the UVA Police Department and the Charlottesville Police Department was still valid. *Borek*, at 324. The statute under which the Memorandum of Agreement and the

Circuit Court Order were made, Va. Code § 19.2-17, was repealed by the legislature in 1996. As this Court decided in *Borek*, the Memorandum and the Order were insufficient to be held valid under the surviving similar statutes, Va. Code § 23-234 and § 15.2-1726. *Id.*

Therefore, it is clear that the arrest of the Defendant in this case was "conducted beyond the officer's jurisdictional limits" and, unless validated on other grounds, was not a lawful arrest." *Id.*

## I. Breach of the Peace

An officer acting outside his jurisdiction has only the authority of a private citizen to effect an arrest. At common law, a private citizen may make a warrantless arrest of another for a breach of the peace committed in his presence. *Hudson v. Commonwealth*, 266 Va. 371, 379 (2003). A breach of the peace is an offense disturbing the public peace or a violation of public order or public decorum. *Id.* (citing *Byrd v. Commonwealth*, 158 Va. 897, 902 (1932)). Virginia courts have repeatedly construed erratic and dangerous driving as a breach of the peace. *Id.* at 380 (defendant was weaving over the road and nearly ran the officer off the road). *See also Wilson v. Commonwealth*, 45 Va. App. 193 (2005) (defendant conceded valid grounds for citizen's arrest where defendant was weaving and crossing double line and nearly hit off-duty officer).

In this case, Officer Martin observed the Defendant take a sharp and narrow corner at a relatively high rate of speed. Admittedly, the speed limit posted for 13th Street itself is 25 miles per hour and the officer estimated that Defendant was driving at 15 miles per hour. However, as the officer noted, the Defendant was making a sharp turn on a narrow street with cars approaching in the opposite direction. The officer indicated that he heard the Defendant's tires squealing and, fearing he would be struck head-on, he slammed on his brakes. This case is distinguished from *Borek* where the defendant was suspected only of possible speeding and making a rolling stop before turning right on red. *Borek*, at 327. Here, Officer Martin was clearly concerned that the Defendant's driving was dangerous not only to himself but also to the public. This Court finds that the Defendant's actions were a breach of the peace committed in the officer's presence and, therefore, the officer had the authority as a citizen to make a warrantless arrest.

## II. Color of Office Doctrine

Though the officer had authority to make a citizen's arrest of the Defendant for reckless driving, the officer proceeded to investigate the Defendant for the offense of driving under the influence of alcohol. The

Defendant argues that the evidence gathered by Officer Martin during this investigation, all evidence other than the officer's observations of the vehicle while still in his car on 13th Street, was gathered under "color of office" in violation of the Fourth and Fifth Amendments. Where an officer carries out a citizen's arrest, then he is acting as a citizen and he is limited to merely detaining the individual until an authorized officer arrives. *Hudson*, 266 Va. at 378. The Fourth Amendment is not typically implicated in a citizen's arrest because it applies only to state actors. *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Implicit in this is the notion that the need for protection against unreasonable searches and seizures arises only where the state is the actor performing the search or seizure. When the officer moves beyond his authority to arrest as a citizen and uses his authority as an officer to gather information from a suspect, then the Fourth Amendment may be implicated.[1]

In *Hudson*, the Virginia Supreme Court recognized the "under color of office" doctrine, as "prohibiting a law enforcement officer from using the indicia of his or her official position to collect evidence that a private citizen would be unable to gather." 266 Va. at 377 (quoting *State v. Gustke*, 516 S.E.2d 283, 292 (W. Va. 1999)). In *Gustke*, the court noted that the doctrine is properly understood as a "limitation on the power of police to conduct investigations and to gather evidence outside their jurisdiction." 516 S.E.2d at 292 (citing *State v. Phoenix*, 428 So. 2d 262 (Fla. Dist. Ct. App. 1982)). In this case, Officer Martin conducted an investigation into the Defendant's intoxication that was beyond the scope of the citizen's arrest for reckless driving. A private citizen would not be able to gather the evidence of the field sobriety tests. At most, a private citizen would have been able to stop the Defendant and gather evidence only from plain observation of his person. *See Wilson*, 45 Va. App. at 205-06. Such evidence would include the officer's observations of the Defendant's driving, his observations of his appearance, and any statements volunteered by the Defendant in the initial conversation with the officer. Though no case in Virginia has decided which investigatory techniques violate the "color of office" doctrine, in *Wilson*, the Court of Appeals indicated that field sobriety tests could violate the doctrine. *Id.* at 206.

---

[1] The Supreme Court has applied this logic in a slightly different context. In *Johnson v. United States*, the Court invalidated the warrantless search of the defendant's home and warrantless arrest of defendant as being in violation of the Fourth Amendment even though she consented because "entry was demanded under color of office." 333 U.S. 10, 14 (1948). Her consent was therefore made under submission to authority "rather than as an understanding and intentional wavier of a constitutional right." However, there the officer did not have probable cause to arrest the defendant until he made the unreasonable search of her apartment. It is not therefore clear that an arrest or search done under the color of office will always violate the Fourth Amendment. *See also Collins v. State*, 143 So. 700, 703 (Fla. Dist. Ct. App. 1962).

The Commonwealth argues that it should be immaterial whether the officer used the indicia of his authority in making observations during a consensual, non-mandatory field sobriety test. As the Commonwealth notes, the court in *Hudson* stated that, in making a citizen's arrest, "it is immaterial whether [the officer] purports to act in his capacity as an officer or as a private person." 266 Va. 278, n. 5. The court there was speaking of the initial stop and arrest of a defendant only. The "color of office" doctrine mandates that the authority to make the citizen's arrest encompasses only the moment of arrest and a subsequent passive detention. *Id. See also Wilson*, 45 Va. App. 193. That authority does not extend to further investigation, even where such investigation is consensual. This is precisely because the "color of office" doctrine itself calls the validity of consent by the Defendant into serious question. An extra-jurisdictional arrest does not, *ipso facto*, give rise to the exclusionary rule. *See Troncoso v. Commonwealth*, 12 Va. App. 942, 944 (1991) ("[The Virginia] Supreme Court has steadfastly refused to extend [the exclusionary rule] to encompass evidence seized pursuant to statutory violations, absent an express statutory provision for suppression."). The question remains whether a violation of the "color of office" doctrine of this level amounts to a constitutional violation. There is no prevailing authority in Virginia holding that a violation of the "color of office" doctrine is a constitutional violation.[2] This Court finds here that the violation of the "color of office" doctrine does not amount to a constitutional violation. Officer Martin had clear grounds for a citizen's arrest of the Defendant based on a breach of the peace that occurred in his presence. In the course of that arrest, by observing the appearance and conduct of the Defendant in addition to the Defendant's reckless driving, the officer gained probable cause to believe that the Defendant had committed the offense of driving under the influence of alcohol. *DePriest v. Commonwealth*, 4 Va. App. 577, 583-84 (1987) (stating that the probable cause standard is met where the officer had knowledge of sufficient facts and circumstances to warrant a reasonable man in believing that an offense had been committed). Where the officer has probable cause to make an arrest, the Fourth Amendment is not violated. *Wright v. Commonwealth*, No. 2528-96-3, 1997 WL 755030, * 2 (Va. App. 1997) (unpublished opinion). *See also Penn v. Commonwealth*, 13 Va. App. 399, 407 (1991); *Thompson v. Commonwealth*, 10 Va. App. 117, 121 (1990); *Tharp v. Commonwealth*, 221 Va. 487, 490-91 (1980). Therefore, though the evidence of the field sobriety tests conducted on the Defendant may have been gathered in violation of the "color of office" doctrine, that finding does not end the inquiry here. Even if the "color of office" doctrine is deemed to

---

[2] Indeed, neither the West Virginia courts nor the Florida courts clarified the nature of constitutional implications of a violation of the "color of office" doctrine.

create a constitutional imperative, the application of the exclusionary rule is a separate question for the Court. As the United States Supreme Court has stated in *Arizona v. Evans*, the purpose of the exclusionary rule is to deter unlawful behavior by law enforcement officials. 514 U.S. 1, 11 (1995). The officer here, as in *Borek*, was acting under the good faith belief that he was legally authorized to make this arrest. Therefore, the good faith exception to the exclusionary rule would apply. *See United States v. Leon*, 468 U.S. 897 (1984); *Illinois v. Krull*, 480 U.S. 340, 349 (1987). The Defendant argues that the good faith exception does not apply here because this is not a question of an invalid warrant or an unconstitutional statute. However, this is exactly the situation in which the exclusionary rule does not have the required deterrent effect and therefore should not be enforced. As the Supreme Court stated in *Krull*, "The application of the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant." *Id.* The distinction between a statute later repealed and a statute later determined to be unconstitutional is not significant in this case. The officer's actions here were in reliance on the authority of Va. Code. § 19.2-17, which he reasonably and in good faith believed to be the established law. Therefore, the Motion to Suppress the evidence of the field sobriety tests is denied.

### III. Implied Consent Law

Virginia has implemented an implied consent law under Va. Code § 18.2-268.2 which deems anyone driving or operating a motor vehicle to have consented to a chemical test for intoxication. For the implied consent law to apply, there must be a lawful arrest. In this case, the arrest for driving under the influence was made by an officer who did not have the statutory authority to make an arrest outside of UVA's jurisdiction. The authority for the implied consent law flows from the police power of the state and is "designed to protect other users of state highways." *Deaner v. Commonwealth*, 210 Va. 285, 289 (1969). Therefore, the implied consent law does not take effect without a lawful arrest. *Smith v. Commonwealth*, 32 Va. App. 228, 233 (2000) ("If the arrest is not lawful, consent for blood alcohol testing is not implied, and the results of any such test are not admissible.") *See also Durant v. City of Suffolk*, 4 Va. App. 445, 448 (1987).

This law cannot be reconciled with the common law doctrine of citizen's arrest. A lawful arrest as contemplated by the implied consent statute is one which is carried out by *a law enforcement officer*. The language of Va. Code § 18.2-268.2 and § 19.2-74 indicate that the legislature considered an arrest to be

one carried out by *a law enforcement officer acting in his official capacity.*[3] The law of citizen's arrest creates a distinct and very limited designation for a particular purpose. It is not the equivalent of a proper arrest by law enforcement authorities. To imply consent as authorized under Va. Code § 18.2-268.2 to a citizen's arrest would be an unprecedented expansion of both the implied consent law and the doctrine of the citizen's arrest. Because the implied consent law is a statutory modification of the common law, it is to be strictly construed against the Commonwealth. *Boyd v. Commonwealth,* 236 Va. 346, 349 (1988).

Therefore, Officer Martin's arrest of Mr. Thompson was not a lawful arrest sufficient to implement the implied consent law. The Motion to Suppress the certificate of the breath test analysis must therefore be granted.

*Conclusion*

In accordance with the foregoing analysis, the Defendant's Motion to Suppress is granted in part and denied in part. The observations by the officer of both the Defendant's driving and the Defendant's appearance are admissible as are the statements volunteered to the officer by the Defendant before he took the sobriety tests. Further, because the Defendant's constitutional rights were not infringed by the violation of the "color of office" doctrine, the field sobriety tests are admissible. However, the certificate of the breath analysis is not admissible because the arrest cannot qualify as sufficient to invoke the tenets of the implied consent statute.

---

[3] Further, Va. Code § 19.2-81, "Arrest without warrant authorized in certain cases," establishes situations where officers have authority to arrest without warrants. By its language, it also indicates that the authority to arrest is held by law enforcement