Tuesday                    12th

July, 2005.

In Re:  Lewis Edward Bowling, Jr.,                                              Petitioner.

Record No. 1914-04-3

Upon a Petition for a Writ of Actual Innocence

Before Chief Judge Fitzpatrick, Judges Elder and Humphreys

Lewis Edward Bowling, Jr., petitioned this Court for a Writ of Actual Innocence Based Upon Nonbiological Evidence pursuant to Chapter 19.3 of Title 19.2 of the Code of Virginia.  Bowling claims he is innocent of statutory burglary and grand larceny, of which he was convicted in the Circuit Court of Pittsylvania County on August 31, 2000.  This Court ordered the Attorney General to respond to the petition, appointed counsel to represent Bowling, and permitted Bowling's counsel to reply to the Attorney General's response.  Upon consideration of the petition, the Attorney General's response and motion to dismiss, the reply by court-appointed counsel, and the record, this Court denied the motion to dismiss and remanded the matter to the trial court to certify findings of fact regarding factual issues in dispute.  The trial court conducted a hearing in this matter and supplied this Court with its certified findings of fact.  Upon consideration thereof, we dismiss the petition for failing to establish previously unknown or unavailable evidence sufficient to justify the issuance of the writ.  See Code § 19.2-327.13(i).

I.

On February 22, 2000, a grand jury indicted Bowling for committing statutory burglary and grand larceny at the home of Michael Pickeral.  On May 2, 2000, Jesse W. Meadows, III, Bowling's court-appointed attorney, filed a notice of an alibi defense.  The notice of alibi stated that Bowling, together with "Norman Isaac," had worked for Fred Clements on the day of the theft, but that Bowling

had left the job site at around noon to permit Bowling's girlfriend to use their vehicle. Bowling claimed he went home and alone cared for a toddler until his girlfriend's return between 2:00 and 3:00 p.m.

At the outset of Bowling's bench trial on July 26, 2000, Bowling stated he had given his attorney the names of all witnesses, that his witnesses were present, and that he was ready to proceed with the trial. Meadows advised the trial court there was an alibi witness Bowling had wanted to subpoena, but Meadows could provide no reasonable assurance he would be able to locate the witness if granted additional time. Meadows acknowledged the defense had been granted a continuance on May 23, 2000, to locate the missing witness. Bowling said he understood Meadows' statement, but wanted to proceed with trial.

The evidence proved Bowling had performed construction work at Pickeral's home, ending on August 3, 1999. While at Pickeral's home, Bowling had remarked upon a large glass jar in Pickeral's living room. The jar contained a quantity of coins with an estimated value between $3,500 and $5,500. Pickeral never saw Bowling touch the jar.

When Pickeral returned home at about 2:00 p.m. on August 30, 1999, he found the glass jar missing from its usual location.[1] A "handful" of change and glass shards were in the driveway. Larger pieces of glass, including one that bore Bowling's fingerprint, were under some nearby shrubbery. Between August 3 and 30, 1999, the jar had been cleaned at least twice using window cleaner and paper towels.

When interviewed by the police on November 11, 1999, Bowling first denied having seen the jar. He then said he had seen it, but did not mention having touched it. In a subsequent interview, the police confronted Bowling about the presence of his fingerprint on the glass shard. Bowling then said that he had touched the jar "around the top, . . . somewhere around the middle, and then maybe around the side."

---

[1] Pickeral left the home for work that day at 7:15 a.m. Pickeral's wife was at home until 9:00 to 9:30 a.m., when she went to work.

Testifying in his own behalf, Bowling said he had tried to pick up the glass jar while he was working at the Pickeral residence. Bowling testified that on the day of the theft he was working for Clements building a deck at Clements' mother's home. Bowling said he and "Norman Isaac" had worked on the deck from 8:00 a.m. to 3:30 p.m., excluding a lunch break.

The Commonwealth and the defense stipulated that Bowling had worked for Clements from August 27 to September 9, 1999. Bowling worked Monday through Friday from 8:00 a.m. until 4:00 p.m. each day. According to the written stipulation, "Norman Stewart" was assigned to work with Bowling on the project. Clements did not know, however, whether Bowling was or was not at work on the date of the theft.

At the conclusion of the bench trial, the trial court convicted Bowling of the charged offenses. Both this Court and the Supreme Court of Virginia denied Bowling's petitions for appeal from his convictions.

In connection with a habeas corpus action filed by Bowling, Meadows filed an affidavit indicating that a few days before the originally-scheduled trial date of May 23, 2000, Bowling advised that his alibi had changed because he had been confused about the date of the offenses. Bowling then claimed he had worked with Isaac for Clements and had remained on the job site between 9:00 a.m. and 2:00 p.m. Bowling and Meadows were unable to locate Isaac. As a result, at Meadows' request the trial was continued until July 26, 2000 to give the defense additional time to locate Isaac. Neither Meadows nor Bowling found Isaac before Bowling's trial. Although before his sentencing hearing Bowling informed Meadows he had located Isaac, Bowling never provided Meadows with any further information regarding Isaac.

II.

In support of his petition for a writ of actual innocence, Bowling provided the following documents: (1) an affidavit from Clements, dated July 25, 2000, stating Bowling had worked for him from August 27 to September 9 from 8:00 a.m. to 4:00 p.m. each day with "Norman Stewart"; (2) an

-3-

affidavit, dated January 14, 2002, from Norman Stewart that he witnessed Bowling working from 8:30 a.m. to 2:30 p.m. on the day of the theft; (3) a handwritten anonymous note from a person claiming to have committed the crime;[2] (4) Meadows' affidavit filed in the habeas corpus proceeding; and (5) an affidavit from Oscar J. Brooks stating Bowling was at Brooks' home from 7:00 a.m. to 8:30 a.m. on the date of the offenses.[3]

With his response to the petition, the Attorney General produced an affidavit from Stewart dated October 22, 2004. In the affidavit, Stewart, who can neither read nor write, stated he signed a document at Bowling's request in January of 2002. The document was not read to Stewart before he signed it. Stewart was led to believe the document would help Bowling with a tax problem. Stewart remembered, in a general fashion, that he was working with Bowling around the time of August 30, 1999, but he could recall no exact dates or times they worked together. While he was working with Bowling in 1999, Stewart lived in Lynchburg in Fairview Heights. He later moved to Westgate Trailer Park, also in Lynchburg. In November of 2001 Stewart moved to another Lynchburg address.

Upon remand from this Court, the trial court held a hearing on April 7, 2005 regarding Bowling's allegation of actual innocence. At the hearing, Stewart testified he was hired by Clements in 1999 to build a deck at Clements' mother's home in Lynchburg. Stewart's job was to assist Bowling on the project. Stewart and Bowling worked together for at least four days, but Stewart could not remember the exact dates. Stewart stated that at that time he lived at Westgate Trailer Court in Lynchburg. He did not move from that address for three years, and he was listed in the telephone book. Stewart affirmed that he is unable to read or write except to sign his name. At some point, Bowling took

---

[2] Both Bowling and the Attorney General agree the anonymous letter would not be admissible evidence. Because Bowling does not contend the letter somehow supports his petition even though it was inadmissible, we need not consider the letter further in determining whether Bowling is entitled to a writ of actual innocence.

[3] Brooks' affidavit has no tendency to support Bowling's alibi defense because Pickeral's wife was present in the home until 9:00 or 9:30 a.m. on the date of the offenses.

Stewart to the office of a notary. Stewart signed a document Bowling said would help Bowling on his taxes.

Brooks testified he accompanied Bowling and Stewart to the notary in 2000 and witnessed Stewart sign an affidavit. Brooks stated the affidavit was read aloud to Stewart twice before he signed it.

Bowling testified he initially believed Stewart's last name was Isaac, and first learned otherwise two days before trial when he reviewed Clements' affidavit. Bowling said he tried to find Stewart, but he had moved and Clements was unaware of Stewart's whereabouts. Bowling did not see Stewart again until after the trial when Clements sent Bowling and Stewart to perform another job. At that time, Bowling learned Stewart was living at Westgate Trailer Court.

The trial court concluded that Bowling could have obtained Stewart's testimony through diligent efforts prior to the time the convictions became final. Because Stewart was unable to state he was with Bowling at the specific date and time of the theft, the trial court found Stewart's testimony did not support Bowling's alibi. Nor was there affirmative evidence from Clements that Bowling was working on the date and time of the crimes.

III.

The Court of Appeals derives its power to issue a writ of actual innocence from Chapter 19.3 of Title 19.2 of the Code of Virginia, Code §§ 19.2-327.10 through 19.2-327.14. In pertinent part, Code § 19.2-327.11(A) requires a petitioner to allege, under oath,

> (iii) an exact description of the previously unknown or unavailable evidence supporting the allegation of innocence; (iv) that such evidence was previously unknown or unavailable to the petitioner or his trial attorney of record at the time the conviction became final in the circuit court; . . . (vi) that the previously unknown or unavailable evidence is such as could not, by the exercise of diligence, have been discovered or obtained before the expiration of 21 days following entry of the final order of conviction by the court; (vii) the previously unknown or unavailable evidence is material and when considered with all the other evidence in the current record, will prove that no rational trier of fact could have found proof of guilt beyond a reasonable doubt; and (viii) the previously

-5-

unknown or unavailable evidence is not merely cumulative, corroborative or collateral.

To qualify for the issuance of a writ of actual innocence, a petitioner must prove, by clear and convincing evidence, "all of the allegations contained in clauses (iv) through (viii) of subsection A of § 19.2-327.11," and this Court must find "that no rational trier of fact could have found proof of guilt beyond a reasonable doubt . . . " Code § 19.2-327.13(ii). If the petitioner fails "to establish previously unknown or unavailable evidence sufficient to justify issuance of the writ," the petition must be dismissed. Code § 19.2-327.13(i).

Appellant's claim of actual innocence rests upon his ability to prove the alibi defense he advanced at trial, namely that he was working for Clements on a job with Stewart when the offenses occurred. However, neither Stewart nor Clements was able to provide clear evidence that Bowling was working on the date and time of the offenses. Despite his affidavit to the contrary, which Stewart was unable to read, Stewart testified he did not remember the exact dates and times he worked with Bowling. Although Bowling was employed by Clements during the time frame that included the date of the offenses, Clements could not state Bowling was working when the theft occurred.

Furthermore, the record does not demonstrate that any trial testimony Stewart may have been able to provide constituted "unknown or unavailable evidence" undiscoverable through diligence before Bowling's convictions were finalized. Although initially Bowling may have been confused and believed Stewart's last name to be Isaac, Clements advised Bowling before trial of Stewart's true name. With this knowledge, Bowling should have been able to locate Stewart, who lived locally and was listed in the telephone book. In addition, Bowling could have obtained Clements' help to locate Stewart, as Clements had employed him.

Bowling thus has failed to establish previously unknown or unavailable evidence sufficient to justify the issuance of the writ. Accordingly, Bowling's petition for a writ of actual innocence is dismissed. See Code § 19.2-327.13.

Because the issues addressed herein are of first impression and potential litigants and members of the bar may benefit from the directives herein, we direct the Clerk to publish this order.

The Court's records reflect that Melissa W. Friedman, Esquire, is counsel of record for petitioner in this matter. The Circuit Court of Pittsylvania County shall allow the said court-appointed counsel the fee set forth below and counsel's necessary direct out-of-pocket expenses. The Commonwealth shall recover of petitioner the costs in this Court. The Attorney General shall recover of the petitioner her costs expended herein.

Costs due the Commonwealth by petitioner in
  Court of Appeals of Virginia:

        Attorney's fee    $725.00 plus costs and expenses

  Attorney General's costs:

        Attorney's fee    $50.00

A Copy,

Teste:

Clerk

-7-