Tuesday                24th

January, 2006.

In Re:  Dwayne Lamont Johnson,                                          Petitioner.

Record No. 0454-05-2

Upon a Petition for a Writ of Actual Innocence

Before Chief Judge Fitzpatrick, Judges Elder and Humphreys

Dwayne Lamont Johnson (Johnson) petitioned this Court for a Writ of Actual Innocence Based Upon Nonbiological Evidence pursuant to Chapter 19.3 of Title 19.2 of the Code of Virginia.  Johnson claims he is innocent of capital murder and conspiracy to commit capital murder, of which he was convicted in the Circuit Court of New Kent County in September of 2001.  This Court ordered the Attorney General to respond to the petition, appointed counsel to represent Johnson, and permitted Johnson's counsel to reply to the Attorney General's response.  Upon consideration of the petition, the Attorney General's motion to dismiss, the reply by court-appointed counsel, and the record, this Court denied the motion to dismiss and remanded the matter to the trial court to certify findings of fact regarding factual issues in dispute.  The trial court conducted a hearing and supplied this Court with certified findings of fact.  Upon consideration thereof, we dismiss the petition for failing to establish previously unknown or unavailable evidence sufficient to justify the issuance of the writ.  See Code § 19.2-327.13(i).

I.

At about 11:00 p.m. on September 20, 2000, Hope Johnson (Hope), Johnson's estranged wife, was shot and killed in her home in New Kent County.  Hope suffered shotgun wounds to the head, abdomen, and back.  Johnson was at work at the time of the killing.

Earlier in the day on September 20, 2000, Johnson had been convicted in general district court of assaulting Hope. Johnson was sentenced to thirty days in jail, but he immediately noted an appeal of the conviction to circuit court and was released from custody. Before Hope's death, Johnson had threatened to kill or harm her. A protective order had been issued against Johnson, ordering him to refrain from further acts of family abuse and prohibiting contact with Hope.

At trial, Brandon Smith, Johnson's cousin, testified that Johnson visited Smith's home at around noon on September 20, 2000. Johnson was angry that he had been sentenced to jail time for the assault conviction. Referring to Hope, Johnson said, "I hate that bitch. I hope she dies." Johnson asked Smith if he would kill Hope. Johnson discussed various methods of killing Hope, but concluded that Smith should shoot her. Smith refused. Appellant then asked if Smith knew someone who would kill Hope. Smith said he thought Henry Barnes would do it. Johnson offered to give his next paycheck to anyone who would kill Hope.

Smith testified that he and Johnson had several telephone conversations after their meeting on September 20, 2000. Smith then told Barnes that Johnson would pay Barnes Johnson's next paycheck to kill Hope. Johnson left his car at Smith's home so that Smith could transport Barnes to Hope's house.

Using Johnson's car, Lloyd Allen drove Smith and Barnes to Hope's house and dropped them off at about 11:00 p.m. Barnes and Smith cut Hope's telephone line. Hope answered the door when Smith knocked on her window. Smith entered the house, and Hope gave Smith a drink. Smith and Hope observed Allen drive by the house in Johnson's car. Hope picked up the telephone, but discovered it did not work. Hope obtained a cellular telephone. From the doorway, Barnes fired the shotgun he had brought with him. Barnes then fired twice more. Smith and Barnes ran to the car and got inside. After Allen drove from the scene, Smith threw the gun out the window.

A recording of a call Hope made to 911 at the time of her death was introduced into evidence. In the recording, Hope can be heard exclaiming Smith's name.

After the police responded to Hope's home and found her dead, they observed Johnson's car in the area. The police determined that Allen was the driver of the vehicle. Allen showed the police the location of a shotgun in the grass beside a New Kent County road. Smith identified the shotgun the police found as the weapon Barnes used to shoot Hope.

At trial, Smith acknowledged that he had pled guilty to first-degree murder and other charges, thus avoiding a charge of capital murder. Pursuant to the plea agreement, Smith agreed to testify truthfully at Johnson's trial, but he received no promise of what sentence he would receive. Smith testified that he had told the jury the truth about how Hope was killed.

Allen testified that on September 20, 2000, he received a call from Smith asking for Allen to drive Smith to his girlfriend's house. Allen claimed he had no advance notice of the plan to kill Hope. Smith arrived at Allen's house in Johnson's car with Barnes. Allen took the driver's seat of the vehicle, and Smith directed Allen where to drive. At Smith's instruction, Allen dropped off Smith and Barnes. Allen drove around, then returned to meet Smith and Barnes as Smith had told Allen to do. Allen heard gunshots after Barnes had returned to the vehicle and while he was waiting for Smith. Smith subsequently appeared, running from the location where Allen earlier had left him. Allen acknowledged that he had been convicted as an accessory after the fact to Hope's murder and related crimes.

In his defense, Johnson presented evidence that he rode to work with a co-worker on the night of September 20, 2000 because his car had mechanical difficulties. The jury rejected Johnson's defense and found him guilty. A sentencing order for the charged offenses was entered on September 28, 2001.[1]

---

[1] Both this Court and the Supreme Court of Virginia denied Johnson's petitions for appeal following his convictions. One of the claims raised on appeal was that the evidence was insufficient to support Johnson's convictions. The Virginia Supreme Court and the Circuit Court of New Kent County subsequently denied Johnson habeas corpus relief.

II.

In support of his petition for a writ of actual innocence, Johnson provided a letter dated November 18, 2001 from Smith to the trial court.[2] In the letter, Smith indicated he had testified at Johnson's trial because Smith's attorneys said he would receive a lesser sentence in return for his cooperation. Smith also stated: "I never engaged in any conversation with Dwayne Johnson concerning killing or wanting to kill Hope Johnson. The statement that I made concerning this matter was not the truth." Johnson also has provided this Court with an affidavit from Smith dated February 25, 2003. The affidavit is consistent with the contents of Smith's letter to the trial court.

This Court remanded the case to the trial court to determine whether Smith was credible in his assertion that he testified falsely during Johnson's trial. At an evidentiary hearing in the trial court, Smith claimed he told the truth in his November 2001 letter to the trial court. Smith said he entered into a plea agreement to testify against Johnson to avoid a capital murder charge and possible death sentence. Smith denied that Johnson asked him to kill Hope, but claimed instead Johnson had asked him to talk to Hope about dropping the assault charge. According to Smith, Barnes accompanied him on the mission to speak with Hope. They rode in Johnson's car. Barnes brought a shotgun with him, which Smith did not find unusual. They parked across the street from Johnson's home. Barnes cut Hope's telephone line, but Smith did not know why. Barnes subsequently shot Hope using the shotgun. Smith said he did not know why Barnes shot Hope, and was aware of no ill feelings between them. Smith said he never promised Barnes any money on Johnson's behalf to induce Barnes to shoot Hope.

Smith admitted that he had provided, under oath, two or three different versions of the events preceding Hope's death. Smith said he had lied the seven or eight times he testified in court regarding the incident.

---

[2] The record reflects that the trial court sent Smith's letter to Johnson's attorneys on November 29, 2001, more than twenty-one days after entry of the sentencing order on September 28, 2001.

-4-

The trial court noted that Smith, at the evidentiary hearing, was asked to explain the following questions:

> 1.  Why did Henry Barnes accompany Smith to the victim's home?
>
> 2.  Why did Henry Barnes carry a sawed-off shotgun in the car, if the purpose was just to talk to Hope Johnson?
>
> 3.  Why did Brandon Smith arrive at 11 p.m. at the victim's home, instead of a more reasonable time earlier in the evening?
>
> 4.  Why did Smith direct that the car be parked across the highway from the victim's house, rather than park in the driveway in front of the house?
>
> 5.  Why did Henry Barnes (while carrying the shotgun) get out of the car and walk with Smith to the victim's home?
>
> 6.  Why did Henry Barnes (with Smith nearby) cut the telephone lines to the house before Smith woke up Hope Johnson to speak with her?

The trial court concluded:

> I observed Brandon Smith's person, demeanor and attitude as he answered these questions and many others. I found that his testimony was neither logical nor believable, and at times he was evasive.
>
> In summary, the Court finds that Brandon Smith is not credible in his assertion that he testified falsely during the trial of Dwayne Johnson.

### III.

The Court of Appeals derives its power to issue a writ of actual innocence based upon non-biological evidence from Chapter 19.3 of Title 19.2 of the Code of Virginia, Code §§ 19.2-327.10 through § 19.2-327.14. In pertinent part, Code § 19.2-327.11(A) requires a petitioner to allege, under oath,

> (iii) an exact description of the previously unknown or unavailable evidence supporting the allegation of innocence; (iv) that such evidence was previously unknown or unavailable to the petitioner or his trial attorney of record at the time the conviction became final in the circuit court; . . . (vi) that the previously unknown or unavailable evidence is such as could not, by the exercise of diligence, have been discovered or obtained before the expiration of 21 days following entry of the final order of conviction by the court; (vii) the previously unknown or unavailable evidence is material and when considered with all the other evidence in the current record, will prove that no rational trier of fact could have found

-5-

proof of guilt beyond a reasonable doubt; and (viii) the previously unknown or unavailable evidence is not merely cumulative, corroborative or collateral.

To qualify for the issuance of a writ of actual innocence, a petitioner must prove, by clear and convincing evidence, "all of the allegations contained in clauses (iv) through (viii) of subsection A of § 19.2-327.11," and this Court must conclude "that no rational trier of fact could have found proof of guilt beyond a reasonable doubt . . . ." Code § 19.2-327.13(ii). If the petitioner fails "to establish previously unknown or unavailable evidence sufficient to justify issuance of the writ," the petition must be dismissed. Code § 19.2-327.13(i). See In re Bowling, 46 Va. App. 50, 56, 615 S.E.2d 489, 492 (2005).

This Court and the Virginia Supreme Court have considered cases in which the defendant sought a new trial based upon after-discovered evidence that a prosecution witness had recanted his trial testimony. See, e.g., Lewis v. Commonwealth, 193 Va. 612, 70 S.E.2d 293 (1952); Whittington v. Commonwealth, 5 Va. App. 212, 361 S.E.2d 449 (1987); see also In re Carpitcher, ___ Va. App. ___, ___ S.E.2d ___ (2006) (order dismissing petition for writ of actual innocence based on recantation). In this context, it is well settled that

> [w]hile discovery after trial, brought to the attention of the court in due time, that false testimony with respect to material facts has been given by a witness for the prosecution may constitute ground for a new trial, recantation by a State's witness does not necessarily entitle the accused to a new trial. The opportunity and temptation for fraud are so obvious that courts look with suspicion upon such an asserted repudiation of the testimony of a witness for the prosecution, and this is so even though the repudiation be sworn to. . . .
>
> . . . There must be clear and convincing proof that the witness testified falsely at the trial, and not merely proof that by reason of conflicting statements his testimony is unworthy of belief. Application for a new trial is addressed to the sound discretion of the trial court which has the opportunity of seeing and hearing the witness whose testimony is brought under attack, and the prime duty of determining whether he swore falsely at trial.

Lewis, 193 Va. at 625, 70 S.E.2d at 301.

With regard to credibility issues, this Court routinely defers to determinations of the trial court. "Unless we conclude a witness' testimony must be rejected as a matter of law based on its inherent incredibility, we must defer to the credibility determinations of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" Sawyer v. Commonwealth, 43 Va. App. 42, 53, 596 S.E.2d 81, 86 (2004) (quoting Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985)). We keep these well-settled principles in mind in assessing whether Johnson has proven he is entitled to a writ of actual innocence.

Following an evidentiary hearing at which the trial court saw and heard Smith testify, the trial court made a specific determination that Smith is not credible in his present assertion that he testified falsely at Johnson's trial. This finding was based in part upon Smith's inability to provide logical explanations for why he and Barnes acted in the manner Smith now maintains. Smith provided no logical reason why Barnes would have brought a shotgun to Hope's house and shot her if he had not been solicited by Smith with a promise of payment by Johnson. If the purpose of the visit was merely to persuade Hope to drop the charges against Johnson, Barnes would have had no reason to bring a gun to Hope's home and take it to her door, as Smith now claims.

Moreover, other evidence at trial corroborated specific details of Smith's trial testimony that Johnson orchestrated Hope's murder. Smith testified at trial that Johnson provided his vehicle for Smith to use in Hope's killing. Allen's testimony, as well as that of the police officers who investigated the shooting, placed Smith, Barnes, and Allen in Johnson's car in the vicinity of Hope's home at the time of the murder. Hope was heard to exclaim Smith's name in the 911 recording. Allen led the police to the place where the murder weapon was discarded. In addition, Johnson had a motive to have Hope killed and had a history of violence against her. Johnson had just been convicted and sentenced to jail for a crime he committed against Hope and had appealed the general district court's decision. Assuredly, Hope's death would compromise the Commonwealth's ability to prove its case against Johnson in circuit court.

As determined by this Court and the Virginia Supreme Court on direct appeal, the evidence presented at trial was sufficient to support Johnson's convictions. We find the record supports the trial court's credibility assessment of Smith's claim that his trial testimony was untruthful. Thus, appellant has failed to prove by clear and convincing evidence that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." See Code § 19.2-327.13(ii). Therefore, we dismiss Johnson's petition for failing to establish previously unknown or unavailable evidence sufficient to justify the issuance of the writ of actual innocence. See Code § 19.2-327.13(i).

Because the issues addressed herein are of first impression and potential litigants and members of the bar may benefit from the directives herein, we direct the Clerk to publish this order.

The Court's records reflect that Gail Starling Marshall, Esquire, is counsel of record for petitioner in this matter. The Circuit Court of New Kent County shall allow the said court-appointed counsel the fee set forth below and counsel's necessary direct out-of-pocket expenses. The Commonwealth shall recover of petitioner the costs in this Court. The Attorney General shall recover of the petitioner his costs expended herein.

Costs due the Commonwealth by petitioner
   in Court of Appeals of Virginia:

      Attorney's fee            $725.00 plus costs and expenses

   Attorney General's costs:

      Attorney's fee            $50.00

A Copy,

Teste:

Clerk